**Robert S. LIE, Dr., Plaintiff–Appellant,**

**v.**

**ST. JOSEPH HOSPITAL OF MOUNT CLEMENS, MICHIGAN, et al., Defendants–Appellees.**

**No. 91–1950.**

United States Court of Appeals, Sixth Circuit.

Argued April 9, 1992.

Decided May 20, 1992.

John B. Spitzer (argued and briefed), Toledo, Ohio, for plaintiff-appellant.

Gregory G. Drutchas (briefed), Susan Healy Zitterman (argued and briefed), Jeremiah J. Kenney, Brian R. Garves, Kitch, Saurbier, Drutchas, Wagner & Kenney, Detroit, Mich., for defendants-appellees.

Before: MERRITT, Chief Judge; RYAN, Circuit Judge; and FORESTER, District Judge [*]

MERRITT, Chief Judge.

Plaintiff, Dr. Robert S. Lie, brought an antitrust action against St. Joseph's Hospital and the doctors who participated in the staff privileges decision that resulted in suspension of his surgical privileges at St. Joseph's Hospital. The question before this Court is whether, in order to make out a case under section 1 of the Sherman Act, 15 U.S.C. § 1, a plaintiff must show that the defendant has market power in order to show an unreasonable restraint of trade. District Judge Friedman gave summary judgment to the defendants, finding that the plaintiff had shown no genuine issue for trial in the absence of any showing of market power or adverse effects on competition. *See Celotex v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). For the reasons set out below, we affirm the judgment of the District Court.

Dr. Lie applied for surgical privileges at St. Joseph's Hospital in 1974. He was granted privileges in 1976 and apparently practiced for about eight years without any question as to his continued privileges or the quality of care he rendered. Then, following an extended review process, on March 24, 1988, the Hospital's Board of Trustees approved the recommendation of the medical staff that Dr. Lie's surgical privileges be suspended because the care he rendered was unacceptable under quality of care standards. This action completed a process that appears to have been started several years earlier, perhaps as early as 1984, and involved "on again, off again" restrictions on his privileges. According to Dr. Lie's chronology of events, the early parts of the procedure were irregularly handled. Dr. Lie also asserts that he was not notified until early 1987 of any quality of care grounds for restrictions on his privileges. During the later part of the procedure the hospital based its actions on breaches of quality of care standards, provided records to support its actions, and followed its own procedure.

Dr. Lie defines the market as including parts of five counties in an area within a fifty mile radius of his office. St. Joseph's, which is within this area, operates in two locations with 450–500 beds. Several other hospitals in the area offer surgical services, the product Dr. Lie has said is at issue. Dr. Lie has privileges at one of those hospitals: St. John's Macomb Center. St. John's was formerly a 100–bed surgical and medical hospital under the name of Harrison Community Hospital. It was sold in 1985 and now operates as an affiliate of a hospital in East Detroit. It is a small facility, 40 beds, with ten surgical and medical beds, without an intensive care unit, a cardiac care unit, or life support systems. Included in the market area is the city of Detroit.

\* \* \* \* \* \*

■ To establish an antitrust violation, a plaintiff must show a contract, combination, or conspiracy that affects interstate commerce and unreasonably restrains trade. *See White & White, Inc. v. American Hosp. Supply Corp.,* 723 F.2d 495 (6th Cir.1983). To show unreasonable restraint of trade, the plaintiff must show that the conspiracy has the potential to produce "adverse, anti-competitive effects within relevant product and geographic markets."

---

[*] The Honorable Karl S. Forester, United States District Judge for the Eastern District of Kentucky, sitting by designation.

*Davis–Watkins Co. v. Service Merchandise*, 686 F.2d 1190, 1195 (6th Cir.1982), *cert. denied*, 466 U.S. 931, 104 S.Ct. 1718, 80 L.Ed.2d 190 (1984).

The Supreme Court has set out two kinds of analysis to examine whether agreements run afoul of antitrust laws: the first employs a presumption that an agreement is an antitrust violation, thus invoking a *per se* illegality rule to classify the agreement; the second, called "rule of reason" analysis, "requires the factfinder to decide whether under all the circumstances of the case the restrictive practice imposes an unreasonable restraint on competition." *Arizona v. Maricopa County Medical Soc'y*, 457 U.S. 332, 102 S.Ct. 2466, 2472–73, 73 L.Ed.2d 48 (1982).

*Per se* violations involve "agreements whose nature and necessary effect are so plainly anticompetitive that no elaborate study of the industry is needed to establish their illegality." *National Soc'y of Professional Engineers v. United States*, 435 U.S. 679, 692, 98 S.Ct. 1355, 1365, 55 L.Ed.2d 637 (1978). *Per se* illegal restraints on trade such as boycotts and price fixing do not require proof of market power. *See FTC v. Superior Court Trial Lawyers Ass'n*, 493 U.S. 411, 432–36, 110 S.Ct. 768, 780–81, 107 L.Ed.2d 851 (1990). The Supreme Court has justified *per se* rules partially because these rules help a court "avoid a burdensome inquiry into actual market conditions in situations where the likelihood of anticompetitive conduct is so great as to render unjustified the costs of determining whether the particular case at bar involves anticompetitive conduct." *Jefferson Parish Hospital Dist. No. 2 v. Hyde*, 466 U.S. 2, 15–16, n. 25, 104 S.Ct. 1551, 1560 n. 25, 80 L.Ed.2d 2 (1984). *See also Arizona v. Maricopa County Medical Soc'y*, 457 U.S. 332, 344, 102 S.Ct. 2466, 2473, 73 L.Ed.2d 48 (1982) (explaining that "[o]nce experience with a particular kind of restraint enables the Court to predict with confidence that the rule of reason will condemn it, it has applied a conclusive presumption that the restraint is unreasonable").

Under the second kind of analysis, the "rule of reason," it is necessary to "evaluate[ ] [the agreement] by analyzing the facts peculiar to the business, the history of the restraint, and the reasons it was imposed.... to form a judgment about the competitive significance of the restraint." *National Soc'y of Professional Engineers*, 435 U.S. 679, 692, 98 S.Ct. 1355, 1365–66, 55 L.Ed.2d 637 (1978). In analyzing agreements that are not *per se* violations of the antitrust laws, the court is looking to whether the action complained of "has the potential for genuine adverse effects on competition," and this analysis usually involves an inquiry "into market definition and market power." *FTC v. Indiana Federation of Dentists*, 476 U.S. 447, 460, 106 S.Ct. 2009, 2019, 90 L.Ed.2d 445 (1986). The purpose of this "rule of reason" analysis is to discover " 'whether the restraint imposed is such as merely regulates and perhaps thereby promotes competition or whether it is such as may suppress or even destroy competition.' " *Id.* at 458, 106 S.Ct. at 2017, quoting *Chicago Board of Trade v. United States*, 246 U.S. 231, 238, 38 S.Ct. 242, 243–44, 62 L.Ed. 683 (1918).

Occasionally, even in a rule of reason case, the Supreme Court has not demanded inquiry into the industry and proof of market power. The Court lessens the burden on the plaintiff in proving a defendant's market power when the agreement at issue is very similar to *per se* violations and might, but for prudential constraints, be analyzed under the *per se* presumption. *See, e.g., FTC v. Indiana Federation of Dentists*, 476 U.S. 447, 458–61, 106 S.Ct. 2009, 2017–19, 90 L.Ed.2d 445 (1986) (Court recognized that the concerted refusal to deal by the Indiana Federation of Dentists was similar to a group boycott and noted that group boycotts traditionally had been held to be *per se* unlawful, but declined to treat the case as a *per se* violation). The Court does not demand this inquiry into market power in the presence of " 'a naked restriction on price or output,' " and thus does not allow failure to prove market power to defeat a plaintiff's antitrust action in such a case. *Indiana Federation of Dentists*, 476 U.S. at 460, 106 S.Ct. at 2018–19,

quoting *National Collegiate Athletic Ass'n. v. Board of Regents of Univ. of Okla.*, 468 U.S. 85, 109–110, 104 S.Ct. 2948, 2964–65, 82 L.Ed.2d 70 (1984). Similarly, " 'proof of actual detrimental effects' " can obviate the need to prove the defendant's market power. *Id.* 476 U.S. at 460–61, 106 S.Ct. at 2018–19 [citation omitted].

▆▆▆ No one argues that Dr. Lie's case involves a *per se* violation of the antitrust laws, making unnecessary an analysis of the anticompetitive effect of the agreement at issue. Dr. Lie believes, however, that he is not obliged to allege or prove that the defendants had market power. For this view he relies on *FTC v. Indiana Federation of Dentists*, 476 U.S. 447, 106 S.Ct. 2009, 90 L.Ed.2d 445 (1986). He is mistaken in his reading of this case. *Indiana Federation of Dentists* does not hold that antitrust plaintiffs generally are not obliged to plead and prove the defendant's market power. Instead, as indicated *supra, Indiana Federation of Dentists* recognizes that in some "rule of reason" cases, when the plaintiff can show a "naked restriction on price or output" or can show "actual detrimental effects," failure to show market power does not defeat an antitrust action. Dr. Lie has not pled or suggested that he can show a naked restraint or an actual detrimental effect on competition flowing from the suspension of his staff privileges. He produced two kinds of evidence: a reduction in his own income and an affidavit from an expert who would testify that the peer review process, used for anticompetitive purposes, could chill competition among physicians affected by the peer review process. This evidence is insufficient to show an unreasonable restraint of trade, particularly in the face of St. Joseph's evidence of an increase in the number of surgeons practicing in the market area Dr. Lie defined, following Dr. Lie's staff privileges suspension.

Far from having a direct anticompetitive effect strong enough to obviate a plaintiff's need to establish the defendant's market power, this restraint of which Dr. Lie complains, the peer review process, has a public purpose—"policing the competence and conduct of doctors"—and "can enhance competition." *Oksanen v. Page Memorial Hosp.*, 945 F.2d 696, 709 (4th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 973, 112 S.Ct. 973 (1992). *See also* Health Care Quality Improvement Act of 1986, 100 Stat. 3784, 42 U.S.C. § 11101 *et seq.* (illustrating public purpose of peer review process: Congress, in face of findings that show an "increas[ing] occurrence of medical malpractice," has identified "need to restrict the ability of incompetent physicians to move from State to State without disclosure or discovery of the physician's previous damaging or incompetent performance," a need that Congress believed could "be remedied through effective professional peer review," 42 U.S.C. § 11101, and has provided for antitrust immunity for participants in properly conducted peer review process, 42 U.S.C. § 11111). In the absence of actual detrimental effects to competition or a naked restraint on price or output and in the face of a process now approved by Congress, Dr. Lie must allege and prove market power to sustain an antitrust action.

Dr. Lie also relies on *Summit Health, Ltd. v. Pinhas,* —— U.S. ——, 111 S.Ct. 1842, 114 L.Ed.2d 366 (1991), and *Patrick v. Burget*, 486 U.S. 94, 108 S.Ct. 1658, 100 L.Ed.2d 83 (1988), for the proposition that in a staff privileges case, it is unnecessary for a plaintiff to allege or prove market power. Neither of these cases addresses the issue or discusses market power.

Dr. Lie can show only that he has suffered economic injury, a loss of personal income. He shows no evidence to suggest an injury to competition in the form of increased cost or reduced supply of services or harm to the consumer. He produces nothing that suggests an illegal restraint of trade. In the absence of such a showing, Dr. Lie has no antitrust complaint. Because we find that Dr. Lie has failed to make out an antitrust case, we do not reach the other grounds for dismissal proposed by the defendant.

We affirm the judgment of the District Court.