78 F.3d 584
 1996-1 Trade Cases P 71,339
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
APARTMENTS NATIONWIDE, INC., d/b/a Dawson Baker Publishing
Company, Plaintiff/Appellant,
v.
HARMON PUBLISHING COMPANY, INC. and Haas Publishing Company,
Inc., Defendants/Appellees.
 No. 94-4012.
 United States Court of Appeals, Sixth Circuit.
 March 5, 1996.
 
 Before: ENGEL, KENNEDY and SUHRHEINRICH, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff-Appellant Apartments Nationwide, Inc. d/b/a Dawson Baker Publishing Company brought suit against defendants Harmon Publishing Company, Inc. and Haas Publishing Company, Inc., alleging violation of § 1 of the Sherman Antitrust Act, 15 U.S.C. § 1. The District Court granted summary judgment to defendants. For the following reasons, we AFFIRM.
 
 I.
 
 2
 Plaintiff and defendant Harmon are distributors of free publications advertising the sale or lease of apartments or homes in Toledo, Ohio and surrounding Lucas County. In and around Toledo, publications of the plaintiff and of Harmon as well as several other free publications are distributed in banks, hotels, motels, gas stations, supermarkets, and other consumer products outlets (herein, called "distribution points"). Defendant Haas has never offered free publications in the Toledo area.
 
 
 3
 For some time, a so-called "single bin distribution system" was prevalent in the Toledo area. That is, each publication was distributed separately in its own bin which distributors provided at their own expense at their various distribution points which generally permitted the bins to be placed for free. This system was to change in late 1989 when plaintiff promoted a community rack system (called the "ANW system") whereby plaintiff arranged distribution points for the placement of plaintiff's six-pocket community rack. In the ANW rack, plaintiff planned to place his own publications. In addition, plaintiff planned to charge rent for placement of other publications in the rack. The change-over from single bin to community rack meant that Toledo-area publishers other than plaintiff would have to pay for the right to distribute their publications at distribution points which they had previously been able to use for free.
 
 
 4
 The shift from single bin distribution to community racks had immediate consequences. First, defendant Harmon and other publishers responded with the formation of a competing community rack system, Brets Distribution System, ("Brets"). Second, plaintiff obtained an agreement from the Kroger supermarket chain to be the sole agent for the distribution of free publications in thirteen Toledo-area Kroger stores and installed its community racks at Kroger stores beginning in January of 1990. Plaintiff's agreement with Kroger, however, was conditioned on defendant Haas not exercising its right under a prior agreement to have sole distribution rights at these same Kroger markets.
 
 
 5
 Within a short time of the signing of this agreement, Kroger was apparently having some problems with plaintiff and allegedly asked defendant Haas to assert its right and install community racks in Toledo stores. Haas did so in April of 1990 in spite of the fact that Haas never offered its own publications in the Toledo area. Because Haas exercised its right, plaintiff's racks had to be removed from Kroger distribution sites. Plaintiff then rented pockets from Haas' community racks.
 
 
 6
 About eight months later, in January of 1991, defendant Haas brought complaints to plaintiff's attention. Plaintiff's competitors claimed that plaintiff's publication was placed in their pockets on the community rack, obscuring their publications. Furthermore, pocket identification labels had been removed.
 
 
 7
 Then, in November of 1991, Haas sent plaintiff another letter eliminating plaintiff's two pockets in Haas' community racks at Kroger markets. Haas explained that Kroger had requested that the community rack be reduced from an eight-pocket rack to a six-pocket rack. Because the number of pockets had to be reduced, because the Haas' contract with plaintiff had expired, and because Haas had received complaints about plaintiff, Haas explained that it had elected not to renew plaintiff's contract for pockets in the community rack.
 
 
 8
 Plaintiff alleges that its loss of community racks at Kroger markets and its problems from competitors who organized Brets were not isolated business setbacks associated with legitimate competition. Rather, plaintiff alleges that these events were "[t]he result of [defendants'] collusive efforts" and that, as a result, plaintiff "lost most of its advertising for its homes and apartments publications." Appellant's Brief at 23. Plaintiff alleges that revenues of two of its magazines, Living Guide and Home Listings, declined as a result and subsequently ceased publication entirely.
 
 
 9
 The District Court granted summary judgment to the defendants on plaintiff's antitrust claims, finding that plaintiff failed to put forward sufficient evidence of conspiracy with regard to several charges to rebut the inference of legitimate business motivation, and a failure to show evidence of anticompetitive effect concerning a final allegation. The District Court then dismissed pendent state claims without prejudice.
 
 II.
 
 10
 We review the District Court's grant of summary judgment de novo. Pinney Dock & Transport Co. v. Penn. Cent. Corp., 838 F.2d 1445, 1472 (6th Cir.), cert. denied, 488 U.S. 880 (1988). In review of a grant of summary judgment for defendants, the evidence of the plaintiff is to be believed and all justifiable inferences are to be drawn in their favor. Eastman Kodak Co. v. Image Technical Servs., Inc., 112 S.Ct. 2072, 2077 (1992). In this case, however, because the record taken as a whole could not lead a rational trier of fact to find for plaintiff, defendants' motion for summary judgment was properly granted. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).
 
 
 11
 We have articulated a two-part inquiry for evaluating the propriety of summary judgment in an anti-trust case: (1) is the plaintiff's evidence of conspiracy ambiguous, i.e., is it as consistent with the defendants' permissible independent interest as with illegal conspiracy; and, if so, (2) is there any evidence that tends to exclude the possibility that the defendants were pursuing these interests. Riverview Investments v. Ottawa Community Improvement Corp., 899 F.2d 474, 483 (6th Cir.), cert. denied, 498 U.S. 855 (1990). In this case, we have little trouble concluding that plaintiff's evidence is ambiguous, that it is consistent with defendants' permissible independent interests and that plaintiff has failed to provide sufficient evidence "tending to show defendants were motivated by anything other than their own permissible independent interests" to withstand defendants' motion for summary judgment.[1]
 
 
 12
 Plaintiff identifies four events as part of a conspiracy. First, plaintiff alleges that Harmon conspired with Haas for the removal of plaintiff's ANW racks from thirteen Toledo-area Kroger supermarkets. Second, plaintiff alleges that co-conspirators successfully schemed to remove not only plaintiff's racks but also plaintiff's publications from Kroger distribution sites. Third, plaintiff alleges that it was the victim of an illegal group boycott when competitors did not rent space in his community rack, the so-called "ANW rack system." Finally, plaintiff alleges that defendant Harmon and other publishers of free local publications acted in violation of antitrust laws when they instituted their own community rack system ("Brets").
 
 
 13
 With regard to the first allegation, defendant Haas offered competent evidence that the decision to install Haas' racks was upon a request from Kroger. Notwithstanding plaintiff's strenuous statements to the contrary, plaintiff has offered a mere scintilla of evidence to rebut defendant's evidence other than to declare that such actions on the part of Kroger would be "ridiculous." Appellant's Brief at 18.[2] Kroger was not alleged to have taken part in any conspiracy and plaintiff has failed to produce evidence to rebut evidence tending to show that this alleged antitrust activity was in fact initiated unilaterally by an innocent entity.[3] Plaintiff, therefore, failed to meet its obligation to present affirmative evidence in order to defeat a defendant's summary judgment motion. See Street v. J.C. Bradford & Co., 886 F.2d at 1479.
 
 
 14
 The second incident alleged by plaintiff to have been part of an antitrust conspiracy was the exclusion of plaintiff from Haas' community racks at Kroger markets which followed the change-over from eight-pocket racks to six-pocket racks. Similar to the incident at issue in the first allegation, defendant Haas offered evidence that the precipitating event in this incident, the change to a smaller rack, was at the request of Kroger. Nevertheless, it is true that Kroger did not dictate that defendant Haas remove plaintiff's publications, in particular, from the rack.
 
 
 15
 Defendant Haas provided evidence of legitimate reasons to unilaterally decide not to renew plaintiff's contract, however, which plaintiff failed to rebut. Termination in response to complaints is "perfectly legitimate conduct." See Monsanto v. Spray-Rite Service Corp., 465 U.S. 752, 764 (1984) (no inference of antitrust agreement merely from the existence of termination in response to competitors' complaints). Because plaintiff failed to rebut defendants' evidence of legitimate conduct, plaintiff failed to offer evidence "tend[ing] to exclude the possibility that the [defendants] were acting independently." Id. Thus, plaintiff failed to meet his burden to overcome defendants' summary judgment motion on this claim.
 
 
 16
 Plaintiff's third allegation of antitrust activity concerns the refusal of his competitors to rent space in plaintiff's community rack at Kroger's from January to April of 1990. The alleged boycott was concurrent with defendant Harmon's decision to participate in the organization of a competing community rack system, Brets. If the decision to form a competing rack system is not an antitrust violation, the decision not to patronize plaintiff's system could hardly be considered an antitrust violation. To hold otherwise would bind a legally operated business to patronize its direct competitor in order to comply with the law.
 
 
 17
 We proceed therefore to a consideration of plaintiff's final allegation, that formation of Brets constituted a violation of antitrust law. Plaintiff argues that Brets may be thought of as a joint venture and for the purposes of antitrust analysis, we consider it one. See SCFC ILC, Inc. v. Visa USA, Inc., 36 F.3d 958, 962-63 (10th Cir.1994) (defining joint venture in the antitrust context), cert. denied sub nom., MountainWest Fin. Corp. v. Visa USA, Inc., 115 S.Ct. 2600 (1995). But plaintiff appears to conclude that joint ventures are per se antitrust violations. Such a conclusion is unjustified.
 
 
 18
 A joint venture is not necessarily a per se antitrust violation. "Cases to which [the Supreme Court] has applied the per se approach have generally involved joint efforts by a firm or firms to disadvantage competitors by 'either directly denying or persuading or coercing suppliers or customers to deny relationships the competitors need in the competitive struggle.' ... Under such circumstance the likelihood of anticompetitive effects is clear and the possibility of countervailing procompetitive effects is remote." Northwest Stationers v. Pacific Stationery, 472 U.S. 284, 294 (1984) (citations omitted). This case, however, like Northwest Stationers, reflects a cooperative arrangement that would seem to be " 'designed to increase economic efficiency and render markets more, rather than less, competitive.' " Id. at 295 (citing Broadcast Music, Inc. v. Columbia Broadcast System, Inc., 441 U.S. 1, 20 (1979)). Rather than having only ANW racks and Haas racks, Brets enlarged the market to three suppliers of community racks. Finding no per se antitrust violation, we therefore look to rule-of-reason analysis. Business Electronics Corp. v. Sharp Electronics Corp., 485 U.S. 717, 723 (1988).
 
 
 19
 Under such an analysis, the factfinder must determine from all the circumstances whether a practice unreasonably restrains competition. Business Electronics Corp. v. Sharp Electronics Corp., 485 U.S. at 723. To form a judgment about the competitive significance of a restraint, the factfinder must analyze facts peculiar to the business, the history of the restraint, and the reasons it was imposed. National Soc'y. of Prof. Engineers, 435 U.S. 679, 692 (1978); Lie v. St. Joseph Hosp. of Mt. Clemens, 964 F.2d 567, 569 (6th Cir.1992).
 
 
 20
 Here, the facts peculiar to the business, the history of the restraint, and the reasons it was imposed all suggest legitimate procompetitive activity. Brets was formed as a response to plaintiff's introduction of ANW racks which ended the era of free distribution from many distribution points in the Toledo area. Prior to Brets, plaintiff appears to have had the sole available community rack system in the Toledo area with the exception of thirteen Kroger supermarkets which had Haas' Distributech racks.
 
 
 21
 Furthermore, plaintiff's ANW racks appear quite competitive with Brets. In 1990, plaintiff had racks in approximately 100 locations in the Toledo area. JA at 459. Four years later, he had racks in 130 locations. Id. The record gives us reason to believe that there were a total of approximately 200 distribution points in the entire area. See JA at 164-66. Finally, plaintiff's publications were never excluded from Brets racks nor does plaintiff complain of any discrimination against it by Brets. Plaintiff, in short, has provided nothing to suggest that Brets is anticompetitive.
 
 
 22
 The alleged harm to which plaintiff points is rather harm to his own business (more specifically, to his publications, not his distribution business). The goal of antitrust law is not to redress losers of legitimate competition; rather it is to proscribe actions with anticompetitive effect, which is not synonymous. See Northwest Stationers, 472 U.S. at 290; Brunswick Corp. v. Pueblo Bowl-o-Mat, Inc., 429 U.S. 477, 488 (1977).
 
 
 23
 Finally, plaintiff argues that the District Court erred by "dismembering" his claim and not considering the conduct of defendants as a whole. Plaintiff would apparently have us attribute Haas' actions to Harmon, and to Brets, and to other publishers as well. In other words, plaintiff wants this court to assume what plaintiff failed to offer sufficient evidence to prove which we refuse to do.
 
 III.
 
 24
 Therefore, as the evidence put forth by plaintiff is insufficient to meet his burden of proof to survive defendants' motion for summary judgment, see, Riverview Investments v. Ottawa Community Improvement Corp., 899 F.2d 474, 483 (6th Cir.1990), we AFFIRM the District Court's grant of defendants' motion for summary judgment.
 
 
 
 [1]
 Plaintiff's argument that a different standard should apply in this case because the District Court was ruling on a motion for summary judgment rather than a motion for a directed verdict fails. "The inquiry on a summary judgment motion or a directed verdict is the same...." Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir.1989)
 
 
 [2]
 Plaintiff offers three arguments in addition to conclusory ridicule. First, plaintiff argues that Haas (through its Distributech Division's area sales manager Ken Mularcik) did not explicitly state in its letter to plaintiff requesting removal of plaintiff's racks from Kroger markets that defendant was acting upon a request from Kroger. Appellant's Reply Brief at 4; JA at 90. Haas was under no obligation to explain the origin of its request and we find its failure to do so is without significant evidentiary value. See Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 & n. 15 (6th Cir.1989) (discussing the "scintilla rule"). Second, plaintiff argues that the fact that defendant Haas had its racks sent to and assembled by an independent contractor who worked for defendant Harmon is evidence of "the collusive nature of their conduct." This argument appears to equate evidence of any working relationship with evidence of a conspiratorial relationship. While some relationship is a sine qua non of a conspiracy, the existence of a business relationship by itself is not sufficient evidence to rebut Haas' evidence that Kroger requested installation of the racks. Finally, plaintiff argues that Haas' behavior would be economically irrational unless part of a conspiracy. Appellant's Reply Brief at 3. This statement was rebutted by defendants. See Appellees' Brief at 16, n. 7; JA at 206
 
 
 [3]
 At oral argument, plaintiff stated that it did not believe Kroger to have been part of the conspiracy alleged in this case