**EZZO'S INVESTMENTS, INC.; Ezzo Ebeido, Plaintiffs–Appellants,**

v.

**ROYAL BEAUTY SUPPLY, INC.; Alvin Jacobs; Raymond Jacobs; John Fail; Alan Snetman; Matrix Essentials, Inc., Defendants–Appellees.**

No. 95–5898.

United States Court of Appeals, Sixth Circuit.

Argued June 13, 1996.

Decided Sept. 10, 1996.

Richard H. Dinkins, Williams & Dinkins, Nashville, TN, Robert E. Sutton (argued and briefed), Sutton & Kelly, Milwaukee, WI, for Plaintiffs–Appellants.

H. Bruce Guyton (argued and briefed), Woolf, McClane, Bright, Allen & Carpenter, Knoxville, TN, for Royal Beauty Supply, Inc., Alvin Jacobs, John Fail.

Michael I. Mossman, Eisenstein, Moses & Mossman, Nashville, TN, H. Bruce Guyton, Woolf, McClane, Bright, Allen & Carpenter, Knoxville, TN, for Raymond Jacobs.

Herbert R. Rich (briefed), Nashville, TN, H. Bruce Guyton, Woolf, McClane, Bright, Allen & Carpenter, Knoxville, TN, for Alan Snetman.

Thomas L. Anastos (briefed), John D. Parker (argued), Baker & Hostetler, Cleveland, OH, H. Naill Falls, Jr., Farris, Warfield & Kanaday, Nashville, TN, for Matrix Essentials, Inc.

Before: MERRITT, Chief Judge; KEITH and SUHRHEINRICH, Circuit Judges.

MERRITT, Chief Judge.

This case arises from a battle for business and allegations of price fixing among beauty parlors in Nashville. Plaintiffs, a beauty salon and its owner, appeal from the grant of summary judgment to Defendants in this antitrust case. Plaintiffs allege that Defendants (the manufacturer, distributor and another salon), engaged in a price fixing conspiracy with regard to certain beauty products. The District Court erred in holding that there were no material issues of fact in dispute. We therefore REVERSE the decision of the District Court and REMAND the case for trial.

## I.

We state the facts from the record in the light most favorable to Plaintiffs, as we are required to do when the District Court has by-passed trial in favor of summary judgment. Ezzo Ebeido, through his company Ezzo's Investments, owns a beauty salon in Nashville, Tennessee. Since its inception, Ezzo's has provided hair-care services through one styling chair manned by Ezzo Ebeido. In October, 1989, John Fail and Raymond Jacobs of Royal Beauty Supply, Inc. ("Royal"), a beauty products distributor, visited Ezzo's salon and discussed Ezzo's potential purchase of Matrix products from Royal. In 1989 and 1990, Royal was owned by Alvin and Herb Jacobs. John Fail is a sales manager there, and Raymond Jacobs was a sales consultant. Matrix is a manufacturer of "professional salon" products, and for that reason it has a "professional salon policy." This "policy," by contract, forbids distributors from selling Matrix products to establishments that obtain less than half of their revenue from hair care services (as opposed to product sales).

It is undisputed that at the time Ezzo's began purchasing Matrix products, it did not qualify as a "professional salon" because products sales exceeded hair care revenue. John Fail and Raymond Jacobs discussed with Ezzo the possibility of his signing a "Success Club" agreement with Royal, but Ezzo refused to do so, because he did not want to engage in co-op advertising and he did not want to be restricted by Matrix's professional salon policy. Nonetheless, he began to order Matrix products from Royal, and Royal sold them to him. According to Ezzo Ebeido, neither Mr. Jacobs nor Mr. Fail asked to look at Ezzo's books or records, and Mr. Ebeido never agreed to add additional styling chairs in order to meet the professional salon policy. Jacobs and Fail claim that Ezzo's agreed to add additional styling chairs so that his revenue from hair care services would increase to 50% or more. (Ezzo's version of the conversation must be taken as true on appeal.) From mid-October 1989 through March 1990 Ezzo's made numerous purchases of products from Royal.

Sometime in March, 1990, a friend of Mr. Ebeido, Mary Hausman, was having her son's hair cut at Toppers, a salon owned by Alan Snetman. According to Ezzo Ebeido, Mary Hausman told him that Snetman's wife told her that Ezzo's "is just a wholesale place, and we're going to make sure he will not carry products, because he's cutting our prices." Ebeido Dep. at 138.

Then, a few days later, on March 26, 1990, John Fail and Raymond Jacobs met with Mr. Ebeido for lunch at Houston's restaurant in Nashville. Prior to this meeting, Jacobs had a discussion with Jill Bauer, Regional Sales Manager of Matrix, in which she told him that other salons had complained about Ezzo's being allowed to carry Matrix products and that the fact that Ezzo's was discounting was "adding fuel to the fire." Raymond Jacobs Dep. at 53. According to Mr. Ebeido, at the meeting Mr. Fail and Mr. Jacobs told him that because of complaints, Ezzo's had to sell its Matrix products at suggested retail price. He was told that Matrix and Royal would cut him off if he did not do so. Ebeido Dep. at 100, 101, 103. When Mr. Ebeido asked the two if Alan Snetman had made the complaints, they "did not answer the question, but look at each other [sic] and like grin at each other." Ebeido Dep. at 93. Ezzo interpreted the "look" to mean, "how in the world did you find that out so fast?" Ebeido Dep. at 100.

On March 27, Jill Bauer of Matrix called Mr. Ebeido saying she wanted to set up a meeting. Ezzo responded, "I am not going to raise up the prices on Matrix products, if that's what you want to talk about." Ebeido Dep. at 89. After Mr. Ebeido's statement to Ms. Bauer about raising Ezzo's prices, nothing more was said and the conversation ended. Mr. Ebeido assumed that Bauer wanted to discuss pricing, but Bauer never stated that explicitly.

Then, on March 28, 1990 Mr. Ebeido received the following letter from Raymond Jacobs:

Dear Ezzo,

I appreciate to time you spent with John and I on Monday. The purpose of our lunch was to convey to you how much I, as

well as Royal Beauty Supply, value your business.

I understand and empathize with you on how you have built your business and the problems and difficulties you have endured. Ezzo, so may of us face discrimination in life; I know because I too am a minority. You are a successful business man and I believe deeply we can maintain a professional relationship with a fair compromise.

As we discussed Monday, our small discrepancy concerns price structure. We are not asking you to decrease your profitability with Matrix but rather to arrange it in a way which satisfies all parties involved. The simplest way to achieve this is to post suggested retail price on each Matrix item, while at the same time run a salon promotion on the entire product line. From a marketing aspect, you would benefit in two major ways: First you will create more interest and awareness toward Vavoom, Essentials, and Systemé Biologe product lines thereby increasing sales activity. Secondly, you would not sacrifice any profit loss, then maintaining your margins for each product!

Ezzo, we have known each other for over a half a year now and have built a very positive relationship—one based on trust and the ability to work well together. I know we can work with each other to find a solution from which you will benefit and one which will continue our special relationship will into the 90's.

Your Friend,
Raymond

J.A. at 181–82. Mr. Ebeido admitted at his deposition that the letter does not specifically ask him to sell at the suggested retail price, but he maintained that at the meeting he had been asked to do so. In addition, he objected to the suggestion contained in the letter that he "display" the suggested retail but then "discount" the product, stating that he prefers to set the true price and openly display that price, not some other one. Mr. Ebeido made four more purchases from Royal, the last one on May 1, 1990. After that, Royal refused to sell him any more products, giving as the reason his failure to satisfy the

professional salon policy requiring at least one half of revenues from hair care. They then terminated Ezzo's account.

Mr. Ebeido filed suit against Defendants, alleging violations of the Sherman Act Section 1, 15 U.S.C. § 1, the Clayton Act Section 2 (as amended by the Robinson–Patman Price Discrimination Act), 15 U.S.C. § 13, the Clayton Act Section 3, 15 U.S.C. § 14, and the Tennessee Code Section 47–25–101. He also alleged a conspiracy to injure and intentional interference with his economic opportunity. The trial court dismissed Ezzo's Clayton and Robinson–Patman Act claims for failure to state a claim. Ezzo's then withdrew the state law claims. Defendants filed a motion for summary judgment on the remaining claim, the Sherman Act § 1 violation.

In addition to his own testimony, Ezzo's supplied the affidavit of another beauty salon owner, Susan Clark. She stated that in 1988 and 1989, she purchased Matrix products from Royal for her "Head Hunters" salon, and there was never any inquiry about the percentage of sales from services by anyone at Royal or Matrix. Beginning in October, 1990, she purchased Matrix products through Royal for her "Salon Secrets" salon, which she sold at a ten per cent discount off the suggested retail price. Later that year, Ron Beaumont, Royal's salesman, told her that Royal had been "getting a lot of flack" from other salons about her discounting of Matrix. At a subsequent meeting, John Fail told Clark that Royal would not continue to sell Matrix products to Salon Secrets unless Salon Secrets stopped discounting the Matrix line. Clark complied. Then, in July 1991, he raised for the first time the question of her qualification under the professional salon policy, and when she did not provide audited information concerning the allocation of sales, Royal refused to sell additional Matrix products to Salon Secrets.

The Defendants deny ever telling Mr. Ebeido or causing anyone to tell Mr. Ebeido that he must sell at suggested retail price. They claim that the letter from Raymond Jacobs was consistent with the pursuit of Matrix's professional salon policy (even though the letter discusses only pricing and

does not mention the Ezzo's products sales to services ratio). In addition, Matrix claims it has never "waived" its professional salon policy and that it has "uniformly and consistently" enforced its professional salon policy throughout the United States, including in Tennessee. Matrix Brief at 5.

On June 2, 1995, the trial court granted summary judgment in favor of the Defendants. The District Court concluded that Ezzo had "failed to present substantive evidence that tends to exclude the possibility that the defendants acted independently." The District Court based this conclusion on its determinations that 1) "salons throughout Royal's territory are permitted and actually do discount Matrix products" and 2) "Royal and Matrix did not apply the professional salon policy exclusively to Ezzo." This appeal followed.

## II.

In this case, a reasonable juror could find by a preponderance of the evidence that prior to March 26, 1990, Royal and Matrix conspired to fix prices for Matrix products, an agreement which resulted in a request to Mr. Ebeido to sell his Matrix products at suggested retail price. A reasonable juror could also find that when Mr. Ebeido would not do so, Royal and Matrix refused to supply him with any more Matrix products. This would constitute a violation of the Sherman Act § 1.[1] The Defendants respond that Mr. Ebeido was merely asked to "post" the retail prices, and they point to Mr. Jacob's letter as evidence to support that assertion. The District Court found that, "Ezzo conceded that Royal left the ultimate decision of the selling price to Ezzo." After carefully reviewing the relevant deposition testimony, we must disagree.

While it is true that the letter only asks Mr. Ebeido to "post" retail prices, and while it is also true that Mr. Ebeido conceded as much at his deposition, he has never backed off his claim that at the March 26, 1990, meeting, he was asked to charge suggested retail prices for Matrix products. We leave it to a jury to decide if the conversation at Houstons occurred as Mr. Ebeido describes, or whether the request made there was actually the same as that made in the letter. Thus, the question before this court is whether Mr. Ebeido's assertion that he was asked to fix prices and that he was cut off for not doing so is supported by credible evidence. We find that it is.

Mr. Ebeido submitted the affidavit of Susan Clark, which provides solid, independent evidence that the Defendants had previously pressured salons to sell at suggested retail price. In addition, Mr. Jacobs admitted in his affidavit that he and Ms. Jill Bauer of Matrix discussed Mr. Ebeido's discounting prior to the March 26, 1990, meeting at Houstons, and that Ms. Bauer said his discounting was "adding fuel to the fire." Thus, the Defendants themselves admit that Ezzo's discounting was a concern which they discussed together. It is therefore a reasonable inference to conclude that Royal's attempt to get Ezzo's to sell at retail price was instigated in furtherance of a joint decision on the part of Royal and Matrix to get Mr. Ebeido to raise his prices.[2] The fact that Matrix may permit others to do limited discounting does not, contrary to what the District Court held, preclude a finding that there was a conspiracy to fix prices in this case. It is entirely possible that Matrix allows some discounting to occur, but that it limits and controls the extent of that discounting.

Defendants argue that the summary judgment standard to be applied in antitrust cases is much higher than that used in regular summary judgment cases, and that under such a standard, summary judgment was properly granted. Defendants cite the Supreme Court's opinion in *Matsushita Electric Industrial Co. v. Zenith Radio Corp.* to sup-

1. 15 U.S.C. § 1 provides that "[e]very ... conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal."

2. There is also evidence that other salons were complaining about Ezzo and threatening to have him cut off. As Defendants point out, this evidence is double hearsay and may not be admissible. Without deciding the question of its admissibility, we find that the Plaintiff survives summary judgment motion even without this additional evidence.

port their argument. 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Under *Matsushita*, "to survive a motion for summary judgment . . . a plaintiff seeking damages for a violation of [the Sherman Act] § 1 must present evidence that tends to exclude the possibility that the alleged conspirators acted independently." 475 U.S. at 588, 106 S.Ct. at 1356. In this case, Ezzo has done just that. There is evidence that Matrix and Royal were acting together against Mr. Ebeido. The conversation between Jill Bauer and Raymond Jacobs shows a mutual concern about discounting. The fact that those concerns were expressed to Mr. Ebeido by Mr. Jacobs does not preclude an inference that Royal and Matrix agreed that Ezzo's prices were too low and that something should be done about it. Defendants also point to language in *Matsushita* stating that "if the factual context renders respondents' claim implausible—if the claim is one that simply makes no economic sense—respondents must come forward with more persuasive evidence to support their claim than would otherwise be necessary." 475 U.S. at 587, 106 S.Ct. at 1356. *Matsushita*, however, involved an alleged conspiracy to *reduce* prices which the Court deemed implausible. This case involves, instead, the classic anti-trust situation: an attempt to avoid a competitive marketplace by setting prices at an artificially high level. There is nothing implausible or unlikely about the conduct alleged by Mr. Ebeido in this case.

The District Court found that, even if the Defendants had pressured Mr. Ebeido to raise his prices, the matter was immaterial because Mr. Ebeido was cut off for the valid reason that he did not meet the Defendants' professional salon policy. But this proposition seems unlikely, taking the facts in a light favorable to the Plaintiff. It is undisputed that at the time Royal began selling Matrix products to Mr. Ebeido, he did not meet the professional salon policy. If Mr. Ebeido's version of events is to be believed, as it must

be at this time, then he never agreed to add chairs to meet the professional salon policy rule. Thus, it would be a reasonable inference for a fact finder to conclude that Defendants' assertions that Mr. Ebeido was cut off because of his failure to meet the professional salon policy was a mere pretext. Furthermore, this inference is strengthened by the fact that the March 26, 1990 meeting was held to discuss prices (as evidenced by the letter sent a few days later). Furthermore, Mr. Jacobs admitted to having a discussion with Jill Bauer of Matrix in which Ms. Bauer told him that other salons had complained about Ezzo's being allowed to carry Matrix products, and that the fact that Ezzo's was discounting was "adding fuel to the fire." Raymond Jacobs Dep. at 53. Thus, a neutral and objective fact finder could conclude that Royal Beauty Supply's assertion that it "has no interest in how the retailer prices the product" is not believable. *See* Royal brief at 6. The letter to Mr. Ebeido, the affidavit of Susan Clark, and the conversation with Ms. Bauer all refute such a statement.

The District Court pointed to Royal's apparent enforcement of the professional salon policy against Susan Clark, even after she agreed to fix prices, as evidence that Royal's use of the professional salon policy was not a pretext for cutting Ezzo's off. Even if it is true that the professional salon policy was enforced against another salon in the Nashville area, that certainly does not mean that the use of the policy against Mr. Ebeido was not pretextual, especially where there is significant evidence that it was used simply as an excuse.[3]

### III.

For these reasons, the decision of the District Court in REVERSED and the case is REMANDED for trial.

---

**3.** Defendant Snetman argues that in order to prove a vertical restraint agreement involving a manufacturer and a dealer, the claimant must present evidence of a specific agreement on price or price levels. *See Business Electronics Corp. v. Sharp Electronics*, 485 U.S. 717, 735, 108 S.Ct. 1515, 1525, 99 L.Ed.2d 808 (1988). In this case,

there is some evidence of specific prices (i.e. suggested retail price). Although that evidence is directed primarily toward Matrix and Royal and so, ultimately, may not be sufficient to prove a claim against Snetman, we do not decide that question in this opinion.