Patricia PASSAGE and her husband, Robert Passage, Plaintiffs–Appellees,

v.

Detective James DELOACH, Defendant–Appellant,

Metropolitan Government of Nashville and Davidson County, Police Chief Emmett Turner, Officer Martin Burns, Officer James Miller, Sergeant Brad James, Paul Sorace, Charles T. Boles, and Mark Longmire, Defendants.

No. 01–6123.

United States Court of Appeals, Sixth Circuit.

May 9, 2003.

BEFORE: NORRIS and
BATCHELDER, Circuit Judges; and
BARZILAY, Judge.*

### OPINION

ALAN E. NORRIS, Circuit Judge.

Patricia and Robert Passage, who are husband and wife, brought this section 1983 civil rights action against the Metropolitan Government of Nashville and Davidson County, Tennessee, Nashville's Chief of Police, and several of its police officers in the wake of the arrest of Mrs. Passage. The district court granted summary judgment to all of the defendants except for appellant, Detective James De-

Loach. With respect to Detective DeLoach, the district court concluded that "when the evidence is viewed in a light most favorable to plaintiffs ... DeLoach could have lacked probable cause [to arrest Mrs. Passage]." The case then went to trial on this single theory. Despite a unanimous defense verdict, the district court granted a renewed motion for a directed verdict, effectively granting judgment as a matter of law to plaintiffs. A second jury then awarded Mrs. Passage $4,000 and her husband nothing.

Because we find that a police officer in Detective DeLoach's position could reasonably conclude that he had probable cause to arrest plaintiff, we reverse the judgment of the district court and remand this matter with instructions to reinstate the jury's verdict.

### I.

This court reviews *de novo* a district court's decision to grant judgment as a matter of law. *Ezzo's Invs., Inc. v. Royal Beauty Supply, Inc.*, 243 F.3d 980, 985 (6th Cir.), *cert. denied*, 534 U.S. 993, 122 S.Ct. 460, 151 L.Ed.2d 378 (2001). Judgment as a matter of law is appropriate when "there is no legally sufficient evidentiary basis for a reasonable jury to find for [a] party on [an] issue." Fed.R.Civ.P. 50(a)(1). In making that assessment, the district court must "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). Furthermore, "although the court should review the record as a whole, it must disregard all evidence favorable to

* The Honorable Judith M. Barzilay, United States Court of International Trade, sitting by designation.

the moving party that the jury is not required to believe." *Id.* at 151, 120 S.Ct. 2097. It is against that backdrop that we must assess the decision of Detective DeLoach to arrest plaintiff.

This suit arose from a series of misunderstandings about a credit card. On January 14, 1997, Mr. and Mrs. Passage were traveling from New York to Texas and stopped at a motel in Nashville for the night. Mrs. Passage attempted to pay for the room with a Discover card, which was declined. She then produced a Visa card, which was accepted.

According to Detective DeLoach, he was sent to the motel based upon a report that a stolen credit card had been used to pay for a room. After speaking with the motel clerk, he requested backup assistance and was joined by other officers. While in the motel office, Detective DeLoach testified that he viewed "a machine." The clerk then escorted DeLoach, Officer Paul Sorace, and other officers to Room 111, where Mrs. Passage and her husband were staying.

Sorace and DeLoach knocked on the door of the room, which was partially opened by Mrs. Passage. At her request, the officers produced identification and indicated that they were investigating a stolen credit card. According to Officer Sorace, when Detective DeLoach asked if they could see identification and the credit card that she had used, she refused. At this point, DeLoach placed Mrs. Passage under arrest.

Mrs. Passage remembers things slightly differently:

[T]here was a bang on the door, and I thought it had to be somebody's suitcase going by was my first thought, and then I heard another bang, bang, bang, bang. I woke up and I thought, well, I'll just see who it is, you know. It could be behind the door, you know.

So I have the chain on, and [my husband] was still sleeping, he never heard it at all, and I said—before I opened the door, I said, Yes?

And he said, Is there a Pat Passage in there?

I said, Yes, I'm Pat Passage.

And he said, Open the door, you're under arrest.

Arrest? So—I'm sorry. So I—I left the lock on the door, and, you know, the chain, and I opened the door, and I said, I have to see a badge or something.

After DeLoach produced a badge, plaintiff let the officers in.

Mrs. Passage went on to testify that, after changing out of her night clothes, she was handcuffed and placed in a patrol car by Detective DeLoach. According to Officer Sorace, he inventoried the contents of her purse and noted that a number of credit cards bore her name. He passed this information along to DeLoach because it was unusual for anyone involved in credit card fraud to possess legitimate identification.

Returning to the motel office for further investigation, the officers determined that there had been a mistake: Mrs. Passage had not used a stolen credit card. They then released her. According to Detective DeLoach, he apologized and gave Mrs. Passage his business card. She estimated that she spent between twenty and thirty minutes in the patrol car; Detective DeLoach guessed between ten and twenty minutes.

## II.

Because Detective DeLoach takes the position that the district court improperly substituted its judgment for that of the jury in determining whether probable cause to arrest existed, it is worth reiterat-

ing the appropriate factors that govern a probable cause determination:

> For a police officer to have probable cause for arrest, there must be "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing or is about to commit an offense." *Michigan v. DeFillippo,* 443 U.S. 31, 37, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979); *see also Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); *Fridley v. Horrighs,* 291 F.3d 867, 872 (6th Cir.2002). "Probable cause requires only the probability of criminal activity not some type of 'prima facie' showing." *Criss v. City of Kent,* 867 F.2d 259, 262 (6th Cir.1988); *see also United States v. Strickland,* 144 F.3d 412, 415 (6th Cir.1998) ("The Fourth Amendment, after all, necessitates an inquiry into probabilities, not certainty.").
>
> The probability of criminal activity is assessed under a reasonableness standard based on "an examination of all facts and circumstances within an officer's knowledge at the time of an arrest." *Estate of Dietrich v. Burrows,* 167 F.3d 1007, 1012 (6th Cir.1999); *see also Hunter v. Bryant,* 502 U.S. 224, 228, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) ("[T]he court should ask whether the agents acted reasonably under settled law in the circumstances, not whether another reasonable, or more reasonable, interpretation of the events can be constructed . . . after the fact."); *Strickland,* 144 F.3d at 415 ("[T]he Fourth Amendment does not require that a police officer know a crime occurred at the time the officer arrests or searches a suspect.").
>
> Once an officer establishes probable cause, he or she is under no obligation to continue investigating and may instead pursue the arrest of a suspect. *Criss,* 867 F.2d at 263 ("A policeman, however, is under no obligation to give any credence to a suspect's story nor should a plausible explanation in any sense require the officer to forego arrest pending further investigation if the facts as initially discovered provide probable cause.").
>
> In the § 1983 context, the question of whether probable cause existed is left for the jury, unless there is only one reasonable determination possible.

*Crockett v. Cumberland College,* 316 F.3d 571, 580–81 (6th Cir.2003) (citations omitted).

After reviewing the testimony introduced at trial and "draw[ing] all reasonable inferences in favor of the nonmoving party," *Reeves, supra,* we conclude that there was a "legally sufficient evidentiary basis for a reasonable jury" to find that Detective DeLoach had probable cause to arrest Mrs. Passage. Fed.R.Civ.P. 50(a)(1). Tennessee law criminalizes the following conduct:

> b) A person commits the crime of fraudulent use of a credit or debit card who uses, or allows to be used, a credit or debit card or information from such card, for the purpose of obtaining property, credit, services or anything else of value with knowledge that:
>
> (1) The card is forged or stolen;
>
> (2) The card has been revoked or cancelled;
>
> (3) The card has expired and the person uses the card with fraudulent intent; or
>
> (4) For any other reason the use of the card is unauthorized by either the issuer or the person to whom the credit or debit card is issued.

Tenn.Code. Ann. § 39–14–118(b). During trial, the jury heard testimony from which it could reasonably conclude that at the time of the arrest Detective DeLoach had been sent to the motel on a report of use of a stolen credit card; he had consulted with motel personnel and viewed a "machine"; he had been directed to Room 111; he had shown identification to Mrs. Passage; she had identified herself; and she refused to let the officers see the credit card she had used. We believe that this is enough for a reasonable officer to conclude that he had probable cause to arrest.

As already recounted, this version of events did not go uncontradicted at trial. Mrs. Passage indicated that she had cooperated with the police to the best of her ability. The jury did not credit her testimony, however, as evidenced by its unanimous verdict for defendant. We may not substitute our own credibility determinations for those of the jury; instead we must disregard that evidence that the jury was not required to believe. *Reeves*, 530 U.S. at 150–51, 120 S.Ct. 2097. With the benefit of hindsight, of course, the entire incident is regrettable; Mrs. Passage broke no law and was undoubtedly upset by her arrest. In the press of events, police officers will occasionally, as here, make an arrest that will appear ill-advised with the benefit of hindsight. A mistaken arrest will only state a constitutional claim, however, if an officer makes the arrest without sufficient information to "warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing or is about to commit an offense." *Cumberland*, 316 F.3d at 580 (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979)). In this instance, the jury resolved conflicting testimony in favor of Detective DeLoach and had before it sufficient facts to conclude that Detective DeLoach had probable cause to arrest.

**III.**

The judgment of the district court is **reversed** and this cause is **remanded** with instructions to reinstate the jury's verdict.