RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 08a0453p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

TOTAL BENEFITS PLANNING AGENCY, INC.,
et al.,

                        _Plaintiffs-Appellants,_

         _v._

ANTHEM BLUE CROSS AND BLUE SHIELD,
et al.,

                        _Defendants-Appellees._

No. 07-4115

>

Appeal from the United States District Court

for the Southern District of Ohio at Cincinnati.

No. 05-00519—Michael R. Barrett, District Judge.

Argued: July 30, 2008

Decided and Filed: December 22, 2008

Before: GILMAN and ROGERS, Circuit Judges; ZOUHARY, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Richard B. Reiling, LAW OFFICE, Dayton, Ohio, for Appellants. James M. Burns, WILLIAMS MULLEN, Washington, D.C., Mark Edward Elsener, PORTER, WRIGHT, MORRIS & ARTHUR, Cincinnati, Ohio, for Appellees. **ON BRIEF:** Richard B. Reiling, LAW OFFICE, Dayton, Ohio, for Appellants. James M. Burns, WILLIAMS MULLEN, Washington, D.C., Mark Edward Elsener, PORTER, WRIGHT, MORRIS & ARTHUR, Cincinnati, Ohio, Kent A. Britt, Glenn V. Whitaker, VORYS,

---

[*]The Honorable Jack Zouhary, United States District Judge for the Northern District of Ohio, sitting by designation.

SATER, SEYMOUR & PEASE, Cincinnati, Ohio, B. Scott Jones, REMINGER CO. LPA, Cincinnati, Ohio, Thomas J. Gruber, McCASLIN, IMBUS & McCASLIN, Cincinnati, Ohio, Peter L. Cassady, Sarah Clay Leyshock, Brian R. Redden, BECKMAN WEIL SHEPARDSON, Cincinnati, Ohio, John R. Folkerth, Jr., WEPRIN, FOLKERTH & ROUTH, Dayton, Ohio, Christopher Freeman Johnson, FREUND, FREEZE & ARNOLD, Dayton, Ohio, Maria Del Monaco, ULMER & BERNE, Cleveland, Ohio, John M. Hands, ULMER & BERNE, Cincinnati, Ohio, Edward R. Goldman, RENDIGS, FRY, KIELY & DENNIS, Cincinnati, Ohio, for Appellees.

————————————

**OPINION**

————————————

JACK ZOUHARY, District Judge. Total Benefits Planning Agency and four of its insurance agents (collectively "Total Benefits") appeal a dismissal of their amended complaint for failure to state a claim under 12(b)(6) of the Federal Rules of Civil Procedure. Total Benefits maintained contracts with Anthem Blue Cross and Blue Shield; Anthem Life Insurance Company, Inc.; Anthem Health Plans of Kentucky, Inc.; Anthem Insurance Company, Inc. (collectively "Anthem"); and Cornerstone Broker Insurance Services Agency ("Cornerstone") for the sale of group life and health insurance policies in Ohio, Indiana, and Kentucky. Total Benefits allege Anthem conspired to boycott and blacklist Total Benefits in violation of Section 1 of the Sherman Act. In addition to appealing the dismissal, Total Benefits also appeal the district court's failure to *sua sponte* permit them to file a second amended complaint before dismissing their case.

The district court, after originally denying the motion to dismiss, dismissed the amended complaint after finding Plaintiffs failed to allege a violation of Section 1 of the Sherman Act under either the *per se* analysis or the rule-of-reason test. The court was persuaded in part by two Supreme Court decisions handed down after the district court's original ruling: *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. ___, 127

S. Ct. 2705 (2007); and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007).

For the reasons that follow, we **AFFIRM** the dismissal.

## FACTUAL BACKGROUND

Total Benefits developed "an innovative strategy for controlling health care costs . . . utiliz[ing] a 51-year old federal tax law to 'refinance' health-care costs by raising deductibles on existing group insurance policies and administering benefits through a medical expense reimbursement plan" (Am. Comp. ¶ 22). Total Benefits claim the system is able to "save businesses in Ohio, Indiana, and Kentucky, 20% or more on their health insurance costs, without cutting benefits" (Am. Comp. ¶ 23). In September 2004, Anthem advised Total Benefits that the strategy "was not in the best interest of Anthem or the more traditional insurance agencies," and that Anthem would not permit Total Benefits, or any other Anthem agent, to engage in such practices and remain agents of Anthem. In June 2005, Anthem severed its agency relationship with Total Benefits because they continued to promote the strategy (Am. Comp. ¶ 24).

Total Benefits allege Anthem and its various agents[1] conspired to blacklist and organize an industry boycott against Total Benefits in violation of the Sherman Act, 15 U.S.C. § 1, because Total Benefits refused to relinquish the strategy. Total Benefits also allege defamation, libel, tortious interference with contract, conspiracy, and breach of contract under state law.

## PROCEDURAL BACKGROUND

On August 4, 2005, Total Benefits filed suit to prevent and restrain continuing violations of the Sherman Antitrust Act, 15 U.S.C. § 1. On September 8, 2005, Anthem filed a motion to dismiss, arguing dismissal was appropriate because Total Benefits

---

[1] These other Defendants included Anthem Life Insurance Company, Inc.; Anthem Health Plans of Kentucky; Anthem Insurance Company, Inc.; Cornerstone Broker Insurance Services Agency, Inc.; John Does 1-100; Jane Does 1-100; CAI Insurance Agency; Horan Associates, Inc.; USI Midwest; McGohen-Brabender, Inc.; Brower Insurance Agency, LLC; Lange Financial Group; and Benefit Resources, Inc.

(1) failed to identify the subject, product and geographic markets that were at issue; (2) claimed harm only to themselves as opposed to harm to competition; (3) failed to adequately allege "a contract, combination or conspiracy" in sufficient detail; and (4) was barred from challenging the alleged conduct by the McCarren-Ferguson Act, 15 U.S.C. § 1012, because Total Benefits could not demonstrate a boycott. Cornerstone moved to dismiss on grounds identical to those set forth by Anthem.

On September 8, 2006, the district court denied the motions to dismiss of Anthem and Cornerstone, finding Anthem's refusal to contract with Total Benefits to be a vertical boycott and that the complaint sufficiently alleged Anthem unlawfully coerced insurance agents who did business with Total Benefits. The district court concluded from these allegations that Total Benefits "sufficiently alleged a prima facie case of each element of the *per se* test" for their Sherman Act claim.

Anthem immediately filed a motion to reconsider, advancing the following arguments: (1) the district court erred by using *per se* principles for a vertical boycott; and (2) Plaintiffs' claims must be reviewed under the rule-of-reason test, and Plaintiffs failed to adequately plead "a rule of reason case." Cornerstone again joined Anthem's motion.

On November 2, 2006, Total Benefits filed an amended complaint, further defining their claims against Anthem, Cornerstone, and the newly added other Defendants, claiming these Defendants had conspired with Anthem to boycott, coerce, and otherwise blacklist Total Benefits.

Following the amended complaint, Anthem again moved to dismiss, asserting Total Benefits failed to allege: (1) sufficient detail in connection with the "participants, time, place and effect of the alleged conspiracy"; (2) facts to support the "conclusionary assertions that [Total Benefits] are the victims of a price fixing conspiracy"; and (3) the applicable product and geographic markets, and the impact on competition. The other Defendants filed motions to dismiss asserting these same grounds.

On July 25, 2007, following the *Leegin* and *Twombly* decisions, the district court reversed its earlier position and dismissed the recently amended complaint. The district court held:

- Total Benefits failed to sufficiently allege there was a horizontal agreement between Defendants and therefore failed to state a claim for a *per se* violation under the Sherman Act.

- Total Benefits failed to set forth a prima facie case for a rule-of-reason violation because it failed to plead (a) a set price or price level in order to support a claim of price fixing; (b) plausible grounds to infer an agreement between the parties; (c) an adverse effect on the marketplace; and (d) the existence of market power.

Total Benefits appeal this decision.

## JURISDICTION

The district court had federal question jurisdiction pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1337. This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291.

## STANDARD OF REVIEW

The standard of appellate review for a motion to dismiss pursuant to Rule 12(b)(6) is *de novo*, and the Court will employ the same standard as the district court. *First Am. Title Co. v. Devaugh*, 480 F.3d 438, 443 (6th Cir. 2007); *Nat'l Hockey League Players Ass'n v. Plymouth Whalers Hockey Club*, 419 F.3d 462, 468 (6th Cir. 2005).

An action may be dismissed if the complaint fails to state a claim upon which relief can be granted. Federal Civil Rule 12(b)(6). The moving party has the burden of proving that no claim exists. Although a complaint is to be liberally construed, it is still necessary that the complaint contain more than bare assertions or legal conclusions. *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993) (*citing Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988)). All factual allegations in the complaint must be presumed to be true, and reasonable inferences must be made in favor of the non-moving party. *Great Lakes Steel v. Deggendorf*, 716 F.2d 1101,

1105 (6th Cir. 1983); 2 MOORE'S FEDERAL PRACTICE § 12.34[1][b] (Matthew Bender 3d ed. 2003). The court need not, however, accept unwarranted factual inferences. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). To survive a motion to dismiss, the complaint must present "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007).[2]

A Sherman Act Section 1 complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action"; rather, it must "raise a right to relief among the speculative level." *Id.* at 1964-65. A plaintiff must allege "enough factual matter . . . to suggest that an agreement was made," and "an allegation of parallel conduct and a bare assertion of conspiracy will not suffice." *Id.* at 1965-66.

### DISMISSAL FOR FAILURE TO STATE A CLAIM

Plaintiffs allege the district court erred in failing to find the complaint adequately pled a violation of Section 1 of the Sherman Act based on a *per se* violation or the rule-of-reason test. Each argument will be addressed separately.

---

[2]This Court has cited the heightened pleading standard of *Twombly* in a wide variety of cases, not simply limiting its applicability to antitrust actions. *See*, *e.g.*, *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545 (6th Cir. 2008) (Family & Medical Leave Act); *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426 (6th Cir. 2008) (antitrust); *McKnight v. Gates*, 282 F. App'x 394 (6th Cir. 2008) (age discrimination); *Gilles v. Garland*, 281 F. App'x 501 (6th Cir. 2008) (violation of First and Fourteenth Amendment rights); *B. & V. Distrib. Co., Inc. v. Dottore Cos., L.L.C.*, 278 F. App'x 480 (6th Cir. 2008) (breach of contract); *Ferron v. Zoomego, Inc.*, 276 F. App'x 473 (6th Cir. 2008) (violation of Ohio Consumer Sales Act); *Bishop v. Lucent Tech., Inc.*, 520 F.3d 516 (6th Cir. 2008) (breach of fiduciary duty in ERISA context); *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631 (6th Cir. 2007) (42 U.S.C. § 1983); *NicSand, Inc. v. 3M Co.*, 507 F.3d 442 (6th Cir. 2007) (antitrust); *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523 (6th Cir. 2007) (equal protection). However, some cases have questioned the scope of *Twombly*. *See*, *e.g.*, *United States v. Ford Motor Co.*, 532 F.3d 496, 503 n.6 (6th Cir. 2008); *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291 (6th Cir. 2008); *Midwest Media Prop., L.L.C. v. Symmes Twp.*, 512 F.3d 338, 341 (6th Cir. 2007) (Martin, Moore, Cole, Clay, JJ., dissenting from denial of request for *en banc* hearing). For an exhaustive collection and analysis of over 3,000 district court decisions applying *Twombly*, see Note, *Much Ado About* Twombly, 83 NOTRE DAME L. REV. 1811 (2008).

### *1.* **Per se *Violation*

The *per se* standard recognizes there are some methods of restraint that are so inherently and facially anti-competitive that an elaborate and burdensome inquiry into a demonstrable economic impact on competition in a relevant market is not required. *See Nat'l Soc'y of Prof'l Eng'rs v. United States*, 435 U.S. 679, 692 (1978). When this case was originally filed, there were two possible grounds for the application of a *per se* antitrust claim: (1) a "group boycott" alleging a horizontal agreement among competitors, and (2) a vertical price fixing conspiracy. *See NYNEX Corp. v. Discon, Inc.*, 525 U.S. 128, 136 (1998); *Ezzo's Invs., Inc. v. Royal Beauty Supply, Inc.*, 243 F.3d 980, 986-87 (6th Cir. 2001). However, between the motion for reconsideration and the district court's decision, the Supreme Court decided *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. ___, 127 S. Ct. 2705 (2007), in which it overruled the vertical price fixing standard of *Dr. Miles Med. Co. v. John D. Park & Sons Co.*, 202 U.S. 373 (1911). Now, all vertical price restraints are to be judged under the rule-of-reason standard. Only a group boycott through horizontal agreement can constitute a *per se* violation.

Total Benefits contend that the Anthem Defendants constitute "horizontal direct competitors" under a *per se* analysis. However, Plaintiffs fail to plead in their amended complaint the necessary factual allegations. Specifically, there neither is, nor can be, a horizontal relationship among the Anthem Defendants.

The Supreme Court has held that a parent company and its wholly owned subsidiaries are incapable, as a matter of law, of conspiracy. *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 769 (1984); *Guzowski v. Hartman*, 969 F.2d 211, 213-14 (6th Cir. 1992). This Court has expanded that position to include sister companies with the same parent. *See Directory Sales Mgmt. Corp. v. Ohio Bell Tel. Co.*, 833 F.2d 606, 611 (6th Cir. 1987). The district court properly examined the amended complaint and other public records, including Anthem's 2005 Annual Report and Corporate Disclosure Statements, to determine that each of the Anthem Defendants is

wholly owned and controlled by Anthem Insurance Company, Inc., which itself is owned by WellPoint, Inc. This "sister" relationship between each of the Anthem Defendants makes them incapable, as a matter of law, of conspiring to form a horizontal group boycott in violation of Section 1 of the Sherman Act.

Total Benefits also argue the amended complaint alleges a "hub and spoke" conspiracy that qualifies for *per se* treatment pursuant to *Toys 'R' Us, Inc. v. F.T.C.*, 221 F.3d 928 (7th Cir. 2000).[3] However, this analysis of *Toys 'R' Us* is incorrect. In *Toys 'R' Us*, several toy manufacturers conspired together, and also with Toys 'R' Us, to distribute certain toys to only Toys 'R' Us. In finding a *per se* violation, the Seventh Circuit held the hub and spoke conspiracy included horizontal agreements between competing toy manufacturers as well as vertical agreements with Toys 'R' Us. Thus, the *per se* standard was applied because the case met the *NYNEX* requirement of a horizontal agreement among direct competitors. There is no special exception for applying *per se* status just because there is a hub and spoke conspiracy; the complaint still must show **some** horizontal relationship.

Here, Total Benefits have sufficiently identified the hub as Anthem, and the spokes as the independent insurance agents. However, the rim holding everything together is missing. No agreements are identified between competitors, as were the agreements between the toy manufacturers in *Toys 'R' Us*. Simple allegations in the amended complaint, such as a general date of when the conspiracy likely began and that parties are acting in a similar fashion, are insufficient to establish an agreement. *See Elder-Beerman Stores Corp. v. Federated Dep't Stores*, 459 F.2d 138, 144 (6th Cir. 1972). Total Benefits focus instead on agreements between Anthem and other insurance agents, but these are irrelevant because the critical issue for establishing a *per se* violation with the hub and spoke system is how the spokes are connected to each other.

---

[3]A hub and spoke conspiracy involves a hub, generally the dominant purchaser or supplier in the relevant market, and the spokes, made up of the distributors involved in the conspiracy. The rim of the wheel is the connecting agreements among the horizontal competitors (distributors) that form the spokes. Each of the three parts is integral in establishing a *per se* violation under the hub and spoke theory.

The amended complaint falls short of presenting such a connection, offering only a rimless theory. Thus, the Section 1 claim fails as a matter of law.

### 2.     *Rule-of-Reason Test*

The rule-of-reason test requires the court to analyze the actual effect on competition in a relevant market to determine whether the conduct unreasonably restrains trade. *Nat'l Soc'y of Prof'l Eng'rs*, 435 U.S. at 692. To state a claim under this test, a plaintiff must include in the complaint allegations demonstrating: (1) the defendants "contracted, combined or conspired among each other"; (2) "the combination or conspiracy produced adverse, anticompetitive effects within relevant product and geographic markets"; (3) "the objects of and conduct pursuant to that contract or conspiracy were illegal"; and (4) "the plaintiff was injured as a proximate result of that conspiracy." *Crane & Shovel Sales Corp. v. Bucyrus-Erie Co.*, 854 F.2d 802, 805 (6th Cir. 1988).

The first element requires a plaintiff to allege the existence of the conspiracy in more than "vague and conclusory" terms. *Id.* The Supreme Court in *Twombly* reaffirmed that "conclusory allegations of agreement at some unidentified point do not supply facts adequate to show illegality." 127 S. Ct. at 1966. An antitrust plaintiff must provide factual allegations plausibly suggesting, not merely consistent with, such a claim. *See NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 451 (6th Cir. 2007).

The allegations in the amended complaint fall significantly short of the required pleading threshold. Plaintiffs complain of "a continuing agreement, understanding and concert of actions among Defendants . . . . [S]ince September, 2004, the Defendants and co-conspirators have . . . defamed and libeled the Total Benefits Strategy to third parties," "coerced and threatened certain insurance agents by threatening to blacklist them and cancel their contracts," and "organized a boycott of Plaintiffs" (Am. Comp. ¶ 26). However, nowhere did Plaintiffs allege when Defendants joined the Anthem conspiracy, where or how this was accomplished, and by whom or for what purpose. There is no factual description of the substance of the statements or who made the

statements that "defamed and libeled," "coerced and threatened," and "blacklisted" Plaintiffs. The time period for the conspiracy is generally stated as "since September 2004," but Plaintiffs give no explanation of where or when during this multiple-year time frame any unlawful agreements or understandings might have occurred. Generic pleading, alleging misconduct against defendants without specifics as to the role each played in the alleged conspiracy, was specifically rejected by *Twombly*:

> Apart from identifying a seven-year span in which the § 1 violations were supposed to have occurred (*i.e.,* "[b]eginning as early as February 6, 1996, and continuing to the present," . . .) the pleadings mentioned no specific time, place or person involved in the alleged conspiracies. . . . The complaint here furnishes no clue as to which of the four [defendants] (much less which of their employees) supposedly agreed, or when and where the illicit agreement took place. . . . [A] defendant seeking to respond to Plaintiffs' conclusory allegations in the § 1 context would have little idea where to begin.

*Twombly*, 127 S. Ct. at 1970 n.10 (internal citations omitted).

Plaintiffs only offer bare allegations without any reference to the "who, what, where, when, how or why." Similarly, the vague allegations in the instant case "do not supply facts adequate to show illegality" as required by *Twombly*.

Total Benefits also fail to identify a relevant product market. The Supreme Court requires plaintiffs to identify the relevant product and geographic markets so the district court can assess "what the area of competition is, and whether the alleged unlawful acts have anticompetitive effects in that market." *Brown Shoe Co. v. United States*, 370 U.S. 294, 324 (1962). The district court correctly noted that the amended complaint limits the geographic area to Indiana, Ohio, and Kentucky, but the court also observed that the amended complaint "fails to mention other insurance companies or agents within this market." There is no explanation of other companies with whom Plaintiffs or Defendants compete. Additionally, Total Benefits fail to indicate whether the relevant market consisted of products or services. Within the insurance industry there are a multitude of different policy types (for example, life insurance, health insurance, and group policies), and each is part of its own individual market. Without an explanation

of the other insurance companies involved, and their products and services, the court cannot determine the boundaries of the relevant product market and must dismiss the case for failure to state a claim. *See Worldwide Basketball & Sport Tours, Inc. v. N.C.A.A.*, 388 F.3d 955, 961 (6th Cir. 2004).

The amended complaint falls short of the specificity required for the rule-of-reason test. The district court's dismissal for failing to adequately plead a Section 1 claim was correct.

## NO ABUSE OF DISCRETION FOR FAILING TO INVITE ANOTHER AMENDED COMPLAINT

The standard of review of a district court's denial of a motion for leave to amend a complaint is abuse of discretion, unless the motion was denied because the amended pleading would not withstand a motion to dismiss, in which case the standard of review is *de novo*. *See Evans v. Pearson Enters., Inc.*, 434 F.3d 839, 853 (6th Cir. 2006). Here, Plaintiffs did not seek leave to amend their complaint or proffer an amended pleading. Therefore, the standard of review is abuse of discretion. *See id.* at 853-854; *Sinay v. Lamson & Sessions, Co.*, 948 F.2d 1037, 1042 (6th Cir. 1991).

Total Benefits argue the district court should have initiated an opportunity for Total Benefits to amend a second time before dismissing the case. Anthem maintains no opportunity to amend was necessary because Total Benefits had not requested leave and any additional amendment would have been futile.

After the district court denied the motions to dismiss filed by Anthem and Cornerstone, and after both filed a motion for reconsideration, Total Benefits filed an amended complaint. Total Benefits claim they "*had no reason to suspect* that the District Court would conclude [they] failed to provide adequate factual averments" (App. Br. p. 28 (emphasis in original)). This statement misses the mark. With a motion to dismiss pending, Total Benefits had every reason to make sure their amended complaint met the standard of adequate notice pleading and "plausibility." Indeed, it was **after** Defendants' motions for reconsideration that Total Benefits filed their

amended complaint. Any doubt as to the sufficiency of the allegations in the complaint should have been addressed at that point. It is not the district court's responsibility to rescue Total Benefits by giving them another opportunity to get it right.

Furthermore, the district court was acting on a motion to reconsider and a renewed motion to dismiss. Total Benefits had an opportunity to brief the motions. Total Benefits knew the sufficiency of their complaint was at issue. There simply was no prejudice.

Plaintiffs suggest that when a district court plans to grant a motion to dismiss, it must first allow the parties an opportunity to amend. Such a rule is not only wholly without support, it would render a motion to dismiss useless in disposing of unfit claims. Importantly, Plaintiffs never requested leave for additional amendments, and it is not the district court's role to initiate amendments. "Furthermore, a district court does not abuse its discretion in failing to grant a party leave to amend where such leave is not sought." *Sinay*, 948 F.2d at 1042.

The argument that the district court should have rescued Plaintiffs by *sua sponte* offering leave to amend the complaint is simply misplaced. As the court in *DM Research, Inc. v. Coll. of Am. Pathologists*, 170 F.3d 53, 56 (1st Cir. 1999) stated:

> Once [plaintiff] knew of the thrust of defendants' arguments for dismissal, it was perfectly free to respond to the motion to dismiss by providing the district court with additional facts to make its complaint concrete and plausible. . . . Yet nothing in [plaintiff's] opposition, or even its brief on appeal, has anything factual to underpin its complaint.

The same holds true here.

## CONCLUSION

For the reasons set forth above, the judgment of the district court is affirmed.