*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 09a0129p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

CBC COMPANIES, INC.; CBC INNOVIS, INC.,
                *Plaintiffs-Appellants,*

    *v.*

EQUIFAX, INC.; EQUIFAX INFORMATION
SERVICES LLC,
                *Defendants-Appellees.*

No. 08-3261

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 06-00654—George C. Smith, District Judge.

Argued: March 5, 2009

Decided and Filed: April 2, 2009

Before: SILER, COOK, and McKEAGUE, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Michael J. Canter, VORYS, SATER, SEYMOUR & PEASE, Columbus, Ohio, for Appellants. Michael P. Kenny, ALSTON & BIRD, Atlanta, Georgia, for Appellees. **ON BRIEF:** Michael J. Canter, Kenneth J. Rubin, James Allison Wilson, Jr., VORYS, SATER, SEYMOUR & PEASE, Columbus, Ohio, for Appellants. Michael P. Kenny, Gregory B. Mauldin, Teresa T. Bonder, Peter Kontio, ALSTON & BIRD, Atlanta, Georgia, Robert Garrett Cohen, Roger P. Sugarman, KEGLER, BROWN, HILL & RITTER CO., Columbus, Ohio, for Appellees.

_____

## OPINION

_____

    COOK, Circuit Judge. The Federal National Mortgage Association ("Fannie Mae") and the Federal Home Loan Mortgage Corporation ("Freddie Mac") regulate the residential-mortgage-loan industry by requiring mortgage brokers and lenders to consider a consumer's credit information before approving loans. Specifically, federal regulations require brokers

and lenders to purchase data from each of the three nationwide consumer reporting agencies ("NCRAs")—Experian, Ltd., TransUnion LLC, and Equifax, Inc.   Plaintiffs CBC Companies, Inc. and CBC Innovis, Inc. (collectively, "CBC") are resellers—companies that purchase consumer credit information from all three NCRAs and consolidate the data into a "tri-merged report."  As a cheaper alternative, some resellers also sell copies of tri-merged reports, or "reissues."  CBC filed this antitrust lawsuit against Equifax, Inc. and its reseller subsidiary, Equifax Information Services LLC (collectively, "Equifax"), after Equifax implemented a contractual fee that CBC alleges will restrict the ability of resellers to offer reissues.  Equifax moved to dismiss the case, and CBC now appeals the district court's grant of that motion.  Because CBC failed to allege an antitrust injury and thus lacks standing, we affirm.

I.

After conducting business absent a contract for two years, Equifax demanded that CBC sign an agreement (the "Reseller Agreement") as part of a new policy that allegedly required resellers to pay a fee—comparable to the price of an original tri-merged report—each time a reseller sold a reissue.  CBC responded by filing this lawsuit on July 31, 2006, citing violations of Sections 1 and 2 of the Sherman Act.[1]  15 U.S.C. §§ 1, 2. Alleging that Equifax threatened to terminate its status as a reseller, CBC signed the Reseller Agreement a few months later.  After CBC filed suit, Equifax changed the fee terms pertaining to reissues multiple times.  Equifax first announced a decrease in the fee to $1.05 per reissue, then switched to an algorithm-based penalty, and finally, declared that an "explicit per-transaction formula" would determine a fee based on each reseller's volume of sales.

CBC contends that by requiring resellers to pay a fee upon selling each reissue—despite not purchasing new data—Equifax harnesses the "monopoly power" it shares with other NCRAs in the market of providing credit data (the "Mortgage Reseller Market") in order to monopolize and attempt to monopolize the service of providing consumer credit information to mortgage lenders (the "Mortgage Lender

---

[1] The complaint at issue here is the First Amended Complaint, which CBC filed in August 2007.

Market") in violation of Sections 1 and 2 of the Sherman Act.  15 U.S.C. §§ 1, 2. Because only lenders (not brokers) have the option of purchasing reissues as opposed to original tri-merged reports, the Mortgage Lender Market is at issue here.  Concluding that CBC's complaint amounted to a mere contract dispute over price terms, the district court held that CBC failed to allege any antitrust injury and lacked antitrust standing as a result.  The court dismissed the case, and CBC timely appealed.

## II.

We review de novo a district court's decision to dismiss a complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *J&R Mktg., SEP v. Gen. Motors Corp.*, 549 F.3d 384, 389 (6th Cir. 2008).  In our review, we accept a plaintiff's factual allegations as long as they "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Particularly in the antitrust context, the Supreme Court cautions that "a district court must retain the power to insist on some specificity in pleading before allowing a potentially massive factual controversy to proceed." *Mich. Division-Monument Builders of N. Am. v. Mich. Cemetery Ass'n*, 524 F.3d 726, 731–32 (6th Cir. 2008) (quoting *Twombly*, 550 U.S. at 558).

The district court dismissed CBC's complaint because it failed to allege any antitrust injury—a "necessary, but not always sufficient," component of antitrust standing.  *Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104, 110 n.5 (1986); *see NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 450 (6th Cir. 2007) (en banc) ("[A]ntitrust standing is a threshold, pleading-stage inquiry and when a complaint by its terms fails to establish this requirement we must dismiss it as a matter of law.").  To prove antitrust injury, the key inquiry is whether *competition*—not necessarily a competitor—suffered as a result of the challenged business practice.  *See NicSand*, 507 F.3d at 450 ("[O]ne competitor may not use the antitrust laws to sue a rival merely for vigorous or intensified competition."); *see also J.B.D.L. Corp. v. Wyeth-Ayerst Labs., Inc.*, 485 F.3d 880, 887 (6th Cir. 2007) (requiring an antitrust plaintiff to demonstrate that "the alleged violation tended to reduce competition overall" and that "the plaintiff's injury was a consequence of the resulting diminished competition" (citation omitted)).  Unless an antitrust plaintiff

alleges an injury that arises from "an anticompetitive aspect of the practice under scrutiny," the complaint will not survive Rule 12(b)(6) scrutiny. *See NicSand*, 507 F.3d at 451 (quoting *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 334 (1990)). CBC contends that it established the requisite injury for antitrust standing by alleging that Equifax is leveraging its "monopoly power" in the Mortgage Reseller Market to restrain competition in the Mortgage Lender Market by "imposing and threatening to impose financial penalties on Resellers that sell Reissues, and by diminishing and threatening to diminish the competitive advantage Reissues enjoy over [tri-merged] reports." This argument is meritless.

First, CBC's complaint contains only conclusory allegations, and not facts sufficient to support more than a speculative injury to competition. *See Twombly*, 550 U.S. at 555. CBC suggests that Equifax is: (1) diminishing the competitive advantage of reissues over tri-merged reports; (2) restricting competition between its own reseller subsidiary, Equifax Mortgage, and other resellers; and (3) increasing reissue costs and decreasing options for mortgage lenders. In effect, CBC argues injury in the form of "higher costs [for reissues] and loss of market share in the Mortgage Lender Market."

But CBC's complaint fails to allege key facts to substantiate an antitrust injury—that is, that competition in the Mortgage Lender Market decreased due to Equifax's Reseller Agreement. Although the complaint contends that "CBC Innovis and other Resellers are the principal victims of Equifax's unlawful actions," CBC never identifies any of these other resellers, and never establishes whether any of these resellers signed a contract similar to the Reseller Agreement. *See Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 437 (6th Cir. 2008) ("Without an explanation of the other insurance companies involved, and their products and services, the court cannot determine the boundaries of the relevant product market and must dismiss the case for failure to state a claim."). Moreover, although CBC filed its amended complaint in August 2007, several months after signing the Reseller Agreement, the complaint fails to allege any specific increases in costs for its reissues or lost market sales in the Mortgage Lender Market. CBC's complaint offers

generalized allegations of antitrust injury, but the Supreme Court requires more than "naked assertion[s]" to establish antitrust standing. *See NicSand*, 507 F.3d at 451 (quoting *Twombly*, 550 U.S. at 557). As the *Twombly* Court pronounced, "a naked assertion . . . gets the complaint close to stating a claim, but without some further factual enhancement it stops short of the line between possibility and plausibility." 550 U.S. at 557.

Second, the facts alleged in CBC's complaint suggest that CBC's fundamental frustration is with the price terms of the Reseller Agreement, rather than specific anticompetitive behavior. Summarizing its own complaint, CBC argues that because it "pleaded that Equifax's unilaterally imposed contractual restrictions impair resellers' ability to compete and that Equifax is the only source of a necessary input, the Amended Complaint presents triable issues of fact." Essentially, CBC disagrees with the price terms of the contract that Equifax proposed and CBC later signed. But even where a business carries a significant portion of the market share, antitrust law is not a negotiating tool for a plaintiff seeking better contract terms. *See Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, L.L.P.*, 540 U.S. 398, 408 (2004); *Arthur S. Langenderfer, Inc. v. S.E. Johnson Co.*, 917 F.2d 1413, 1428 (6th Cir. 1990) ("'Section 2 of the Sherman Act does not give [plaintiffs] the exclusive right to dictate the terms on which they will deal,' nor does it require [the defendant] to accede to every demand of [the plaintiffs].") (quoting *Trace X Chem., Inc. v. Canadian Indus., Ltd.*, 738 F.2d 261, 266–67 (8th Cir. 1984)).

Third, to the extent that CBC alleges an impact on the Mortgage Lender Market, the federal regulations are the more likely basis for any putative injury, and not any specifically anticompetitive conduct on the part of Equifax. No cognizable antitrust injury exists where the alleged injury is a "byproduct of the regulatory scheme" or federal law rather than of the defendant's business practices. *RSA Media, Inc. v. AK Media Group, Inc.*, 260 F.3d 10, 13, 15 (1st Cir. 2001); *see Standfacts Credit Servs. v. Experian Info. Solutions, Inc.*, 294 F. App'x 271, 272 (9th Cir. 2008) (holding that even where the NCRA defendants held "monopoly power in the wholesale market," plaintiff

resellers could not succeed on their antitrust claims where the monopoly power derived from federal requirements and not anticompetitive conduct). The district court properly concluded that CBC's complaint failed to allege facts sufficient to support an antitrust injury, and thus rightly dismissed the complaint for failure to establish antitrust standing.

III.

We affirm the district court's decision dismissing CBC's complaint.