NOT RECOMMENDED FOR PUBLICATION
File Name: 09a0456n.06

No. 08-3767

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Jul 02, 2009**
LEONARD GREEN, Clerk

COMTIDE HOLDINGS, LLC,

    Plaintiff-Appellant,

v.

BOOTH CREEK MANAGEMENT CORP.,

    Defendant-Appellee.

_____/

On Appeal from the United States District Court for the Southern District of Ohio.

BEFORE:    RYAN, GIBBONS, and SUTTON, Circuit Judges.

RYAN, Circuit Judge.    The plaintiff, Comtide Holdings, LLC, asks that we reverse the district court's judgment dismissing the case for failure to state an actionable claim. We agree that the district court erred and we will reverse the judgment for the defendant.

**I.**

In 2004, the defendant, Booth Creek Management Corp., contacted J. Daniel Schmidt, the sole owner and principal of Comtide Holdings, LLC, about selling his auto dealership in Ohio. Although Schmidt was not interested in selling his dealership, he agreed to help Booth Creek find another dealership to buy.

On March 9, 2005, Schmidt and Booth Creek agreed in writing that if Schmidt found a dealership within the twelve-month term of the agreement that Booth Creek later

purchased, Booth Creek would pay Schmidt five percent of the purchase price of the dealership. Paragraph 5 of the agreement, certainly not a model of clarity, states:

> CLOSING. Broker shall receive reasonable notice of closing. The BROKER's fee referred to in Paragraph 4 above is <u>payable</u> in full to the BROKER only upon closing of the escrow/settlement account and payment of the consideration to the SELLER, and the BROKER shall be <u>paid</u> his fee when such consideration is paid, if BUYER <u>buys</u> from, invests in, or manages operations for any SELLER during the term of this agreement, or within twelve (12) months after the termination of this agreement if the BUYER was advised of the SELLER by Broker before termination of this agreement and before BUYER learns of such SELLER from any other source.

(Emphasis added.)

Schmidt introduced Booth Creek to the owner of Berlin City, a New England dealership, and negotiations between Booth Creek and Berlin City soon followed. Schmidt alleges that Booth Creek and Berlin City agreed to the material terms of their sale by June 2005, a little over three months after the Schmidt/Booth Creek brokerage agreement was signed. Schmidt also alleges that Booth Creek and Berlin City signed formal transaction documents for the sale of the dealership on March 2 and March 7, 2007. On August 1, 2007, twenty-nine months after Schmidt and Booth Creek signed their brokerage agreement, Booth Creek and Berlin City closed their deal and Booth Creek purchased Berlin City for $86,000,000.

On August 13, 2007, Booth Creek informed Schmidt that it did not intend to pay him a commission. Schmidt assigned his contractual rights to Comtide, which then initiated suit in the Court of Common Pleas of Franklin County, Ohio, demanding $4,300,000, or five percent of the $86,000,000 sale. Booth Creek removed the suit to federal court on the basis of diversity jurisdiction and moved the district court to dismiss Comtide's complaint

under Fed. R. Civ. P. 12(b)(6). The district court granted the motion, and Comtide now appeals.

## II.

We review de novo the district court's judgment granting a Rule 12(b)(6) motion to dismiss. CBC Companies, Inc. v. Equifax, Inc., 561 F.3d 569, 571 (6th Cir. 2009). Dismissal is appropriate when a plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). We assume the factual allegations in the complaint are true and construe the complaint in the light most favorable to the plaintiff. Bassett v. Nat'l Collegiate Athletic Ass'n, 528 F.3d 426, 430 (6th Cir. 2008).

The district court held that the contractual language concerning Schmidt's broker's commission clearly and unambiguously requires judgment for the defendant. Whether a contractual term is ambiguous is a question of law, Astor v. International Business Machines Corp., 7 F.3d 533, 539 (6th Cir. 1993), and so, we review de novo the district court's finding that the contractual language is clear and unambiguous, North American Specialty Insurance Co. v. Myers, 111 F.3d 1273, 1278 (6th Cir. 1997).

We will apply Ohio contract law because a federal court sitting in diversity applies the substantive law of the forum state. See Gahafer v. Ford Motor Co., 328 F.3d 859, 861 (6th Cir. 2003). In Ohio, a contract is ambiguous "where the language of [the] contract is reasonably susceptible of more than one interpretation." Brown v. Columbus All-Breed Training Club, 789 N.E.2d 648, 653 (Ohio Ct. App. 2003). When a contract is deemed ambiguous, the meaning of the contract—that is to say, the intent of the parties—is a factual question ordinarily proved by extrinsic evidence. Shifrin v. Forest City Enters., Inc., 597 N.E.2d 499, 501 (Ohio 1992).

The district court held, and the defendant agrees, that Schmidt did not earn a commission because under the terms of the brokerage agreement, Schmidt would be entitled to a commission only if a deal for the purchase and sale of a dealership located by Schmidt was <u>closed</u> within twenty-four months of March 9, 2005.  Since the deal closed on August 1, 2007, twenty-nine months after the brokerage agreement was entered, Schmidt had no claim for a commission.

Schmidt's position is that under Paragraph 5 of the brokerage agreement he is entitled to the five percent commission as long as 1) Schmidt introduced the seller to Booth Creek within the twelve month period of the contract, and 2) Booth Creek purchased the dealership within twelve months after that, regardless of when the sale closed.  In other words, Schmidt interprets the term, "buys" to mean something other than "closing," and argues that for all intents and purposes, Booth Creek bought Berlin City before the twenty-four-month period expired.

### III.

This court's duty is to decide whether the language of Paragraph 5 is clear and unambiguous—that is to say, free from contrary reasonable interpretations.  The district court stated that "[t]he contract at issue is perfectly clear. . . . could not be clearer."  But what is "perfectly clear" to the district court is hopelessly abstruse to us.

One plausible interpretation of Paragraph 5 is that the parties intended Schmidt to have earned the commission 1) only if he introduced Booth Creek to a dealership for sale within twelve months of March 9, 2005, 2) Booth Creek made a deal to buy the dealership, <u>and</u> 3) a deal closed "the escrow/settlement account and pa[id] [] the consideration to SELLER" within twenty-four months of March 9, 2005.

Another reasonable interpretation is that Schmidt would have earned his commission if he had introduced Booth Creek to a dealership/seller within twelve months of March 9, 2005, and Booth Creek "b[ought] from, invest[ed] in, or manage[d]" that dealership within twenty-four months of March 9, 2005. In this interpretation, Schmidt would have earned his commission at one date, and would be entitled to receive payment of it at a later date (closing).

It seems clear that Schmidt's right to a commission is conditioned, at the very least, upon Booth Creek "buy[ing]" the Berlin City dealership within twenty-four months of March 9, 2005. What is unclear, however, is what the parties intended "buy[ing]" to mean. Did they mean the point at which an agreement to purchase the dealership was formed, or did they instead mean the point when the deal was closed and the consideration paid? Put differently, did they mean that Schmidt was entitled to claim a commission provided that Booth Creek bought the Berlin City dealership within twenty-four months of March 9, 2005, but was not entitled to actually receive it, until the closing took place; or, did they mean he was entitled to receive his fee and was entitled to payment of the fee at the time of closing?

The language of Paragraph 5 is confusing and ambiguous. It requires interpretation and fact finding as to what the parties intended. The purchase agreements and other extrinsic evidence may shed some light on what the parties intended "buys from" to mean, and what, if any, other condition applied to Schmidt's entitlement to his fee. The district court granted the motion to dismiss before Comtide had an opportunity to discover the purchase agreements and depose any witnesses who might properly shed light upon the intention of the parties.

**IV.**

We hold that the contract is ambiguous as a matter of law and that the judgment as a matter of law for the defendant was inappropriate. Consequently, we **REVERSE** the district court's judgment and **REMAND** for further proceedings.