NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0727n.06

No. 10-4056

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Jul 05, 2012*

LEONARD GREEN, Clerk

| | |
|---|---|
| NORTHAMPTON RESTAURANT GROUP,<br>INC., and HAMBURGER STATION, INC.,<br><br>　　　　Plaintiffs-Appellants,<br><br>v.<br><br>FIRSTMERIT BANK, N.A.,<br><br>　　　　Defendant-Appellee. | )<br>)<br>)<br>)<br>)<br>)　　On Appeal from the United States<br>)　　District Court for the Northern<br>)　　District of Ohio<br>)<br>)<br>)<br>) |

Before:  BOGGS and GIBBONS, Circuit Judges; RUSSELL, Senior District Judge.[*]

RUSSELL, Senior District Judge.  Northampton Restaurant Group, Inc., and Hamburger Station, Inc., (collectively "Northampton" or the "restaurant") brought suit against FirstMerit Bank, N.A. ("FirstMerit" or the "bank") on behalf of themselves and several putative classes, alleging that the bank breached its contracts with its customers, wrongfully converted their property, and violated the implementing regulations of Electronic Funds Availability Act ("EFAA" or the "Act"), 12 U.S.C. § 4001 *et seq*.  The district court dismissed all of Northampton's causes of action pursuant to a motion to dismiss by FirstMerit under Federal Rule of Civil Procedure 12(b)(6).  Northampton now appeals dismissal of all of the claims.

## I.  FACTUAL BACKGROUND

Northampton's primary business is the operation of restaurants in Ohio.  To facilitate that business, Northampton maintains a commercial banking relationship with FirstMerit.  Pursuant to contract, Northampton opened a deposit account (*i.e.*, a checking account) with FirstMerit more than twenty years ago.

---

[*] The Honorable Thomas B. Russell, United States Senior District Judge for the Western District of Kentucky, sitting by designation.

Approximately ten years ago, Northampton also opened a credit line (*i.e.*, a credit card) with the bank. Northampton opened the credit line, in part, to provide overdraft protection on its deposit account. If the assets of the deposit account were ever insufficient to cover the account's liabilities, the credit line would be used to cover any overdraft.

Northampton alleged that discrepancies in the deposit account and credit line began occurring in January of 2007. According to Northampton, the bank used the credit line to cover overdrafts in the deposit account even though that account held sufficient funds to pay some or all of the items presented for payment. Each time the credit line was used to cover an overdraft (regardless of whether sufficient funds were available to cover the item), FirstMerit charged Northampton two separate fees. First, the bank charged Northampton an overdraft fee on the deposit account. Second, FirstMerit charged a finance fee on the credit line when it was used to cover an item presented for payment on the deposit account. According to Northampton, the bank wrongfully charged overdraft and finance fees even though the restaurant had sufficient funds to pay some or all of the items presented for payment, and these wrongfully imposed fees constituted a breach of contract by FirstMerit.

Northampton's breach-of-contract claim centers on a banking practice known as "resequencing." When a deposit account is resequenced, items presented for payment on the account during a twenty-four-hour period are not paid in the order in which they were received. Instead, the items are resequenced and paid in order of amount, largest to smallest. Thus, even if the largest item presented for payment on any particular day is the last item received, resequencing causes it to be paid first.

Banks justify resequencing as a means of protecting their customers' interests. Because the largest items presented for payment on a deposit account are often those with the greatest consequences if left unpaid – a payment to a business's main supplier – banks resequence accounts to ensure that these "big ticket" items are paid first. Resequencing has at least two interrelated drawbacks, however. First, when the largest items are paid first, the account's balance is consumed more quickly and this can result in overdraft fees being charged on numerous, smaller payments that the account would otherwise have had funds to cover. For

2

example, if the largest item presented for payment consumes the account's entire balance, all other items will overdraft, and the customer will be charged a fee for each overdraft. Second, if there are insufficient funds in the account to pay the largest item, then no items get paid, even though the funds would cover some or all of the lesser items. Additionally, if a credit line has been established for overdraft protection, as in the present case, and the funds in a resequenced account are insufficient to pay some or all of the items presented for payment, the credit line will be used to cover the shortfall. Thus, in addition to overdraft fees on the deposit account, finance fees will be charged for each extension of credit used to cover a shortfall in the deposit account.

In the present case, Northampton alleged that its contracts with FirstMerit prohibited the bank from resequencing transactions in its deposit account. FirstMerit allegedly disregarded this prohibition and wrongfully charged overdraft and finance fees. Northampton also alleged that FirstMerit's practices were not restricted to its account but also extended to many of the bank's other commercial customers, who comprised the putative classes.

In addition to the breach-of-contract claim, Northampton asserted that FirstMerit wrongfully converted the restaurant's property. The conversion claim is closely related to the breach-of-contract claim. By wrongfully resequencing the accounts, Northampton claimed that FirstMerit converted its property in two ways. First, the bank used funds in Northampton's deposit account that were not used to pay items presented on the account to make investments for the bank's own benefit. Second, FirstMerit converted Northampton's funds when it charged finance fees on the credit line at a time that Northampton's deposit account contained sufficient funds to pay some or all of the items presented.

Finally, Northampton alleged that FirstMerit violated the EFAA, 12 U.S.C. § 4001 *et seq.*, and its implementing regulations in two ways. First, the bank failed to make funds in Northampton's deposit account available as required by FirstMerit's own policies and by the EFAA's implementing regulations. Second, FirstMerit failed to disclose its policies on availability of funds or changes in those policies to its customers within the statutorily prescribed time periods.

## II. STANDARD OF REVIEW

This court reviews *de novo* a district court's dismissal of a case pursuant to Federal Rule of Civil Procedure 12(b)(6), and, in reviewing the dismissal, the court employs the same standard as the district court. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 433 (6th Cir. 2008) (citing *First Am. Title Co. v. Devaugh*, 480 F.3d 438, 443 (6th Cir. 2007); *Nat'l Hockey League Players Ass'n v. Plymouth Whalers Hockey Club*, 419 F.3d 462, 468 (6th Cir. 2005)).

The Federal Rules of Civil Procedure require that pleadings, including complaints, contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint may be attacked for failure "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, the court will presume all of the factual allegations in the complaint are true and will draw all reasonable inferences in favor of the non-moving party. *Total Benefits*, 552 F.3d at 434 (citing *Great Lakes Steel v. Deggendorf*, 716 F.2d 1101, 1105 (6th Cir. 1983)). "The court need not, however, accept unwarranted factual inferences." *Id.* (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)).

Even though a "complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). Instead, the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted). A complaint should contain enough facts "to state a claim to relief that is plausible on its face." *Id.* at 570. A claim becomes plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). If, from the well-pleaded facts, the court cannot "infer more than the mere possibility of misconduct, the complaint has alleged – but has not 'show[n]' – 'that the pleader is entitled to

relief.'" *Id.* at 1950 (citing Fed. R. Civ. P. 8(a)(2)). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Id.

## III. ANALYSIS

The district court dismissed all of Northampton's causes of action under Federal Rule of Civil Procedure 12(b)(6). Having reviewed the district court's opinion and analysis of Northampton's claims, we find no error in the lower court's opinion. Upon our own *de novo* review, we find that Northampton has failed to state a claim upon which relief can be granted.

As detailed above, Northampton alleged that FirstMerit's practice of resequencing the restaurant's deposit account was a breach of the parties' contracts. Despite making this claim, Northampton did not attach any contracts to its complaint and did not include the language of any specific contractual provisions that had been breached by the bank. In its briefs on appeal, the restaurant admitted that it could not provide the contracts to the court because it no longer possessed copies of them. Instead, Northampton argued that dismissal was inappropriate because it should be allowed to conduct discovery in order to obtain the contracts that would show FirstMerit's actions violated their agreement. In a recent anti-trust case, a panel of this court affirmed a Rule 12(b)(6) dismissal in the absence of discovery because:

> [T]he language of *Iqbal* specifically directs that *no* discovery may be conducted in cases such as this, even when the information needed to establish a claim of discriminatory pricing is solely within the purview of the defendant . . . . [The] plaintiff must allege specific facts of price discrimination even if those facts are only within the head or hands of the defendants. The plaintiff may not use the discovery process to obtain these facts after filing suit.

*New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1051 (6th Cir. 2011). In this case, "[i]t is a basic tenet of contract law that a party can only advance a claim of breach of written contract by identifying and presenting the actual terms of the contract allegedly breached." *Harris v. Am. Postal Workers Union*, 198 F.3d 245, 1999 U.S. App. LEXIS 26601, at *14 (6th Cir. Oct. 19, 1999) (per curiam) (table) (citing *Platsis v. E.F. Hutton & Co., Inc.*, 829 F.2d 13 (6th Cir. 1986); *Western Indus., Inc. v. Newcor Canada, Ltd.*, 739 F.2d 1198, 1206 (7th Cir. 1984)). Accordingly, just as it would have been inappropriate

5

to allow the *Louisville Tractor* plaintiff to conduct discovery on the issue of price discrimination in order to avoid dismissal, it would be equally inappropriate to allow Northampton to use the discovery process to find the contracts in dispute *after* filing suit. The restaurant was required to allege facts sufficient to make its breach-of-contract claim plausible on its face, and without the contracts or reference to specific language, Northampton has failed to put forth a plausible claim for relief.

In any event, attached to its motion to dismiss, FirstMerit included copies of the parties' contracts, which expressly show that Northampton agreed that the bank could resequence the deposit account in the manner of its choosing.[1] Furthermore, even in the absence of an agreement, the Ohio commercial code explicitly allows banks to reorder account transactions in any manner they see fit. *See* Ohio Rev. Code Ann. § 1304.29(B) (LexisNexis 1994) ("[I]tems may be accepted, paid, certified, or charged to the indicated account of [a bank's] customer in any order.");[2] *Daniels v. PNC Bank, N.A.*, 738 N.E.2d 447, 449 (Ohio Ct. App. 2000) (finding that a resequencing program did not violate an account agreement and was expressly authorized by § 1304.29(B)). Given these facts, Northampton failed to state a claim for breach of contract upon which relief could be granted, and dismissal of that claim was appropriate.

---

[1] Including the contracts with FirstMerit's motion to dismiss did not convert that motion into a motion for summary judgment under Federal Rule of Civil Procedure 12(d) because Northampton expressly referenced those contracts in its complaint. *See Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) ("When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto . . . and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein.") (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)).

[2] Comment 7 to § 1304.29 of the Ohio Revised Code is particularly instructive in this case:

> As between one item and another no priority rule is stated. This is justified because of the impossibility of stating a rule that would be fair in all cases, having in mind the almost infinite number of combinations of large and small checks in relation to the available balance on hand in the drawer's account; the possible methods of receipt; and other variables. Further, the drawer has drawn all the checks, the drawer should have funds available to meet all of them and has no basis for urging one should be paid before another; and the holders have no direct right against the payor or bank in any event, unless of course, the bank has accepted, certified, or finally paid a particular item, or has become liable for it under section 4-302. Under subsection (b) the bank has the right to pay items for which it is itself liable ahead of those for which it is not.

Ohio Rev. Code Ann. § 1304.29 cmt. 7 (LexisNexis 1994). This comment makes it exceedingly clear that banks may resequence deposit account transactions in whatsoever order they choose.

Northampton also alleged a cause of action for conversion and for FirstMerit's violation of the EFAA, 12 U.S.C. § 4001 *et seq.* In a well-reasoned opinion the district court dismissed those claims because Northampton could not recover as a matter of law. Upon review, the we affirm dismissal of those claims for the reasons articulated by the district court.

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.